*Decision will be entered under Rule 50.*

DEWEY F. COBB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19711.  Promulgated September 30, 1949.

*Briggs G. Simpich, Esq.*, for the petitioner.
*A. J. Friedman, Esq.*, for the respondent.

498

500

HARLAN, *Judge*: The first question is whether the income of the Cobb Canvas Co. for the taxable years is income of a partnership composed of petitioner and his wife, or is the income of the petitioner alone. The Supreme Court of the United States, in *Culbertson* v. *Commissioner*, 337 U. S. 733, has stated that a test to be applied in arriving at the answer to such a question is whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." To the same effect see *Commissioner* v. *Tower*, 327 U. S. 280. In these cases the Court points out that the intent is to be determined from a consideration of the agreement, the conduct of the parties in the execution of its provisions, their statements, the relationship of the parties, their respective abilities and capital contributions, and any other facts throwing light on their true intent.

Ida Cobb did not contribute to the partnership capital. She lent the petitioner, at different times before her marriage to him, amounts aggregating $1,200, but there is no evidence that this amount ever reached the partnership. In fact, the petition herein affirmatively alleges that it did not. In respect of both the partnership with Carson and with Ida Cobb the petition says:

Neither Harold L. Carson or Ida E. Cobb contributed money to the partnership, but both contributed valuable services which was part of the consideration in the acquisition of their partnership interest.

Furthermore, the services rendered by Ida E. Cobb prior to the partnership were not of such an uncompensated and essential character as to constitute the equivalent of capital contribution to the partnership later established, so as to bring this case within the law set forth in a number of cases relied upon by petitioner. *Paul L. Kuzmick*, 11 T. C. 288; *Samuel Goodman*, 6 T. C. 987. During the course of her service Ida developed into a very capable secretary.

This is worthy of special comment in view of her limited business experience and her educational handicaps. Yet the record does not disclose any facts which would elevate her services above those of an able secretary or show that her services were greater than the value received. Carson testified in a most vague and unconvincing manner that customers at various times had expressed a desire to employ Ida at a salary greater than she was receiving, but the customers were not named by him nor did they testify, and he failed wholly to give us the amount of salary which Ida was receiving at the time the offers were made. Such an offer would have an entirely different meaning if made before Ida received her various increases in salary.

According to the evidence the services rendered by Mrs. Cobb for the company were those that a secretary-bookkeeper would ordinarily perform in a business of this kind, such as keeping the books, paying the debts, watching accounts receivable, keeping track of money received and paid out, and, in addition, taking orders over the phone. At some undisclosed time in 1945, a girl was employed by the company to do general office work, and this probably explains why the working days of Mrs. Cobb were reduced from five to three in 1945, thus giving her additional time to devote to her horse activities and to getting their new home arranged.

After the oral partnership agreement, Ida's services were of less importance to the business than before the agreement. While she testified that after the agreement she exercised more care in supervising collections and expenditures than formerly because of Carson's absence, such testimony conflicts considerably with her claim that while Carson was with the firm she had "complete" charge of the office, including the financial matters.

The fact also that after her marriage in 1945 she reduced her own salary because of her reduced hours at the office, taken in conjunction with the fact that she spent less time at the office after the partnership than she did before, would indicate that she herself appraised her services less as a partner than as a secretary.

Ida Cobb became interested in riding horses in 1937, and in 1941 she began to take riding lessons to learn how to show horses at shows. She and the petitioner bought their first show horse after their marriage in the spring of 1945 and hired an expert trainer to teach her to exhibit show horses, and she worked quite a lot in the stable during that year. Other horses were purchased, and Mrs. Cobb testified that they had to be exercised every day, that she rode them every chance she got—practically every day, that she is considered quite an accomplished rider, and that she has won over 75 prize ribbons. She also testified that it took a lot of work and courage to learn how to handle

the horse for show purposes, and that riding and exhibiting the horses took "an awful lot out of me, especially during the show season." It is quite apparent from the evidence that Mrs. Cobb during the taxable years devoted a substantial amount of her time to preparing for and participating in horse shows.

Ida listed as an important vital service to the partnership her riding and training of show horses. According to her testimony this produced the rental of tents to various horse shows. Such rental amounted to $700 in 1944 and $1,400 in 1945. Since the alleged partnership existed only during December of 1945 and since outdoor shows are not usually held in December, it is probable that none of this revenue, even if significant in amount, benefited the business. She was unable to give any amounts received by the partnership from this source in subsequent years. Furthermore, her activities in this line would have had a much closer connection with her husband's riding and training stable at Maple Knoll Farm than with Cobb Canvas Co.

Among other factors in this case that militate against the *bona fides* of this partnership is the manner in which the partnership profits were distributed. Both petitioner and his wife drew money as desired and spent it for household and family needs, as well as for supporting the training stables at Maple Knoll Farm. Ida had no bank account or other means of separating her income from the funds of her husband. It is interesting to note, furthermore, that this family partnership was formed in the year that the business profits increased from $18,151.80 to $36,744.19. It is difficult to accept petitioner's contention that, when he sought legal counsel to dissolve his partnership with Carson and to lay the foundation for the new partnership with his wife, the subject of income tax was not considered by him or his counsel. The attorney who handled this transaction did not testify. The only apparent change in Ida's activities after the alleged partnership was that she then personally wrote some checks on the joint bank account to pay for household expenses and the expenses of the petitioner's training stable. This is hardly of enough value to petitioner's business to bring this case within the provisions of the *Tower* case, *supra*, or the recent case of *Culbertson* v. *Commissioner*, 337 U. S. 733, in which the Court says:

> If upon a consideration of all the facts it is found that the partners joined together in good faith to conduct a business, having agreed that the service or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient.

After a careful consideration of all the evidence, we conclude, as stated in our findings, that petitioner and his wife did not in good

faith and acting with a business purpose intend to join together in December 1945 in the conduct of the business of the Cobb Canvas Co. as partners.

The remaining issue involves the question of the proper allocation of the expenses of the operation of Maple Knoll Farm for the years 1945 and 1946 between business and personal expenses. At this farm the petitioner maintained some horses for himself and his wife for their own pleasure. They also boarded and trained horses for others. The fees charged others for boarding and training their horses were reported as gross receipts of the business, and in arriving at the amount of gross profit or loss the costs of training, labor, feed and other supplies were deducted, including costs of maintaining and training horses used by petitioner and his wife. In the return for 1946 filed by the Maple Knoll Farm, $1,200 was included in gross income for maintenance of petitioner's horses. In the 1945 return of the Maple Knoll Farm, no amount was included for maintenance of their horses and the respondent, in determining the deficiency for that year, reduced the amount of a farm loss claimed by petitioner by $1,200.

The petitioner now contends that the respondent erred in reducing the loss from operation of Maple Knoll Farm claimed for 1945 by $1,200 and also erred in permitting $1,200 to be deducted from the expense of the farm as a personal expense for 1946.

The petitioner argues in support of his contention that Maple Knoll Farm was not a farm for pleasure; that it was strictly a business proposition; and that this is borne out by the fact that the respondent has so treated it in allowing the losses from its operation in 1945 and 1946 as deductions in computing petitioner's taxable income for those years. We do not agree with petitioner. The evidence indicates that the Maple Knoll Farm was purchased because both petitioner and his wife were fond of horses, and that the idea of boarding and training horses for others originated at the time Ida Cobb decided to learn how to show horses at horse shows and had as its objective the reduction or elimination of the cost of maintaining and training their own horses through profits realized from fees charged others for boarding and training horses. The farm was operated partly for profit and partly for pleasure. In so far as petitioner engaged in boarding and training horses for others, he was engaged in business for profit, but the cost of maintaining the horses owned by him and his wife was a personal expense. In reporting the income from the farm, petitioner was entitled to deduct from gross receipts only expenses attributable to operating it as a business for profit. In his 1946 return he accomplished this by deducting from gross receipts all of the expense of

operation, whether business or personal, and then including in income as an offset the cost of maintaining horses owned by him and his wife. The respondent did substantially the same thing when he reduced the loss claimed from the operation of the stable for 1945 by the amount of $1,200. In the absence of any evidence that the expense of maintaining the horses owned by petitioner and his wife in 1945 and 1946 did not amount to $1,200, the petitioner's claim that respondent erred in his treatment of this expenditure in each year must be and is disallowed.

Reviewed by the Court.

*Decision will be entered for the respondent.*

DISNEY, *J.*, concurs only in the result.

---

BLACK, *J.*, dissenting: The holding of the majority opinion that Ida E. Cobb was not a partner in the Cobb Canvas Co. is based upon an ultimate finding of fact which reads as follows:

Petitioner and his wife did not in good faith and acting with a business purpose intend to join together in December 1945 in the conduct of the Cobb Canvas Company as partners.

It seems to me that this finding is wholly unjustified by the facts of record in this case as set out in the findings of fact. To use the language of the United States Court of Appeals for the District of Columbia in the recent case of *Wenig* v. *Commissioner*, 177 Fed. (2d) 62, reversing a memorandum opinion of the Tax Court:

We neither question nor depart from the findings of basic facts as made by the Tax Court. But we think its conclusions are not within the realm of legitimate inference from the record as a whole or from the specific facts found. * * *

Such is my view in the instant case. Based upon the undisputed evidence in the record, I think there should be an affirmative finding that Ida E. Cobb was a partner during the period in question and should be so recognized. It seems to me that to hold under the facts we have here that she was not a partner does violence to the rationale of the Supreme Court's decision in *Commissioner* v. *Culbertson*, 337 U. S. 733.

My reasons for believing that Mrs. Cobb should be recognized as a partner under the facts of the instant case under the Supreme Court's decision in the *Culbertson* case are stated more fully in a dissenting opinion which I have written in the *W. F. Harmon*, 13 T. C. 373. Reference is hereby made to my dissent in that case for a more complete statement of my views.