W. F. HARMON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17505.    Promulgated September 27, 1949.

*James D. Dye, Esq.,* for the petitioner.
*Elmer L. Corbin, Esq.,* for the respondent.

**OPINION.**

HARLAN, *Judge*: The first issue is whether Gladys M. Harmon, petitioner's wife, and Jack D. Harmon, petitioner's son, should be recog-

nized for income tax purposes as his partners for the taxable years 1943 and 1944.

We have found as a fact that the partnership here in question was formed July 1, 1942, with no intent on the part of Gladys M. Harmon or of her alleged copartners, in good faith and acting with a business purpose, that she join together with them in the present conduct of the enterprise, and that Gladys M. Harmon was not a partner in the operation of the business in 1942, 1943, and 1944. We have found that such an intent did exist as to Jack D. Harmon, both on his part and on the part of his copartners and that Jack D. Harmon was a partner in the operation of the business in 1942, 1943, and 1944.

In so finding we have borrowed from the language of the Supreme Court in the recent case of *Commissioner* v. *Culbertson*, 337 U. S. 733, and we have endeavored to apply the principles set forth in that case. As was said therein (p. 1214) :

\* \* \* The question is whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purpose for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. \* \* \*

It is quite clear that there was nothing in the conduct of Gladys M. Harmon after the partnership agreement was signed which gave evidence of any intention on her part to be a bona fide partner in the enterprise. She did not participate in the daily business of the partnership. She merely made cursory visits to the plant two or three times weekly. To be sure, she attended partnership meetings. But in the absence of any other participation by her in the partnership business and in the face of the provision of the partnership agreement that the management and control of the affairs of the partnership were to be vested in petitioner and in Grover Kuhlmann, this mere attendance of Gladys M. Harmon at partnership meetings does not show a genuine intention either on her part or on the part of her alleged partners that she be a partner.

As to the abilities of Gladys M. Harmon, the only evidence we have is that she typed the office correspondence at home in the first year or two of the business, in the early 1930's. The ability to perform this service at a period so remote from the date of the formation of the partnership and from the years at issue here is certainly not evidentiary as to an intent on the part of Gladys M. Harmon at the time of the formation of the partnership to be a partner in the "present conduct of the enterprise." (*Commissioner* v. *Culbertson, supra.*)

As for the purported capital contribution of Gladys M. Harmon to the partnership, it is true that the entire amount—consisting of cash

and interest in an account receivable—had been received by her as a gift from her husband on the day the partnership was formed and that she contributed it to the partnership on that same day. This circumstance alone would not prevent her from being a partner, for, as *Commissioner* v. *Culbertson, supra,* points out (p. 1217):

* * * If the donee of property who then invests it in the family partnership exercises dominion over that property—and through that control influences the conduct of the partnership and the disposition of its income—he may well be a true partner * * *. In the *Tower* and *Lusthaus* cases we distinguished between active participation in the affairs of the business by a donee of a share in the partnership on the one hand and his passive acquiescence to the will of the donor on the other.

But, as we have already pointed out, there is nothing to indicate active participation in the affairs of the business by Gladys M. Harmon or a sharing on her part in the management and control. All the indications are of passive acquiescence on her part to the will of petitioner in the running of the business. In these circumstances we can only say that her purported capital contribution was, again in the language of the *Culbertson* case, "mere camouflage."

We must accordingly hold that respondent did not err in including in petitioner's gross income for 1942, 1943, and 1944 the distributive share of income of the partnership Kuhlmann & Harmon Machine Tool Co. attributable to the alleged partnership interest of Gladys M. Harmon.

The situation is different as to Jack D. Harmon, the son of petitioner. From the time of the formation of the partnership on July 1, 1942, until he was incapacitated by an operation in September 1943, shortly before his entry into the military service, Jack D. Harmon worked steadily in the plant. He worked a regular shift during the summer months of those two years, and about six or seven hours nightly several nights a week during the school year. He had been trained in this work since he was 10, his training was pushed by his father, and he showed considerable ability in the work. In spite of his youth, there is no doubt that Jack D. Harmon made a valuable contribution to the partnership by his labors in the shop, the heart of the enterprise. Moreover, in addition to his work as a tool and die maker, he also sat in on the bidding work and he attended the partnership meetings.

To be sure, the partnership agreement provided, as already stated, that the management and control of the affairs of the partnership were to be vested in petitioner and in Grover F. Kuhlmann. But, indicative of the greater responsibility which was placed in Jack D. Harmon than in Gladys M. Harmon, the agreement also contained the provision that upon the death or inability of petitioner to act as managing partner, such managerial authority would pass to Jack D. Harmon. Moreover, it is clear that Jack D. Harmon, through his daily work at

the plant, was far more able to make a useful contribution at the partnership meetings than was Gladys M. Harmon, who was only an occasional visitor at the plant. Though he was only 16, he had a thorough knowledge of shop operations. Of course, his words could not have carried as much weight as those of the older, more experienced men, particularly the two fathers, in the partnership. But that is often the case where a younger man is in partnership with an older one. That it is the case does not prevent the younger man from being a partner. It is quite clear, as we have found, that both Jack D. Harmon and his copartners intended that he join together with them in the "present conduct of the enterprise," in the language of *Commissioner v. Culbertson, supra,* and that he was truly a partner with them in the taxable years here in question.

Jack D. Harmon was unable to perform services for the partnership during 1944 because of his induction into the Naval Air Corps at the close of 1943. However, having acquired the status of a partner, he was not divested of it during 1944 by his entrance into the military service. In fact he used his time during military service to the greatest possible advantage of the partnership by taking special training in mechanical engineering and acquiring seven semesters of college credit in this field.

The capital contribution of Jack D. Harmon to the partnership was like that of Gladys M. Harmon in that it also was received by him as a gift from petitioner on the day the partnership was formed and was contributed by him to the partnership on that same day. However, his "substantial contribution to the control and management of the business" (*Commissioner v. Tower,* 327 U. S. 280) adequately supports our determination that he intended to be and was a bona fide partner for tax purposes with petitioner. (*Commissioner v. Culbertson, supra.*) Therefore, we must hold that respondent erred in including in petitioner's gross income for 1943 and 1944 the distributive share of Jack D. Harmon in the income of the partnership.

The second issue is whether petitioner is entitled to deduct in 1944 as a casualty loss under section 23 (e) (3) of the Internal Revenue Code [1] the sum of $674.80 as a result of damage to his personal residence in 1944 from a hail and rain storm followed by flood. Respondent does not dispute the fact that the house was damaged by casualty. Nor does he dispute the fact that petitioner paid $801 for repairs and

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

\* \* \* \* \* \*

(e) Losses by Individuals.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

\* \* \* \* \* \* \*

(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. \* \* \*

collected $126.20 insurance. But he does contend that petitioner is not entitled to charge off as a loss the difference of $674.80.

Both petitioner and respondent agree that the measure of a casualty loss on nonbusiness property under section 23 (e) (3) of the code is the difference between the fair market value of the property immediately before and after the casualty, but not in excess of the adjusted basis of the property, and diminished by any insurance recovered. *Helvering* v. *Owens*, 305 U. S. 468. It is respondent's position that petitioner has failed to establish the fair market value of the property both immediately before and immediately after the storm, and that therefore his claim should be disallowed.

The petitioner testified that his property was of the value of approximately $10,000 just before the casualty. Such testimony is admissible from the owner of property even though he have no expert knowledge in real estate values. *United States* v. *3969.59 Acres of Land*, 56 Fed. Supp. 831; *Lovejoy* v. *Darien*, 41 Atl. (2d) 98. We have no testimony as to the value of the property immediately after the casualty, but there is very clear evidence that the cost of the necessary repairs to the property was $802.21; that such repairs did not care for all of the damage; that the amount paid for repairs was not excessive; and that the repairs did not increase the value of the property. Under such circumstances, the cost of repairs has been accepted as evidence of the loss of value of the damaged property as a result of a casualty. *Murphy* v. *Hawthorne*, 117 Ore. 319; 244 Pac. 79.

Therefore, we hold that respondent erred in disallowing the deduction of $674.80 claimed by petitioner on his 1944 return as a casualty loss to nonbusiness property under section 23 (e) (3) of the code.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, concurs only in the result.

———

BLACK, *J.*, dissenting: I am unable to agree to the holding of the majority that Gladys M. Harmon was not a member of the partnership of Kuhlmann & Harmon Machine Shop, the name of which was later changed to Kuhlmann & Harmon Machine Tool Co. This holding of the majority is based upon an ultimate finding of fact which reads as follows:

The partnership here in question was formed July 1, 1942, with an intent on the part of Jack D. Harmon and his copartners, in good faith and acting with a business purpose, that he join together with them in the present conduct of the enterprise. Jack D. Harmon was a partner in the operation of the business in 1942, 1943, and 1944.

No such intent existed as to Gladys M. Harmon, either on her part or on the part of her copartners. Gladys M. Harmon was not a partner in the operation of the business in 1942, 1943, and 1944.

I agree with the conclusion in the above finding that Jack D. Harmon was a partner, but I do not agree that Gladys M. Harmon was not a partner. How, in the face of the findings of fact which preceded it, the majority could make a finding that there was no intent that Gladys should be a partner is more than I can see. It seems to me that it is a finding which is wholly unjustified by the facts. To use the language of the United States Court of Appeals for the District of Columbia in the recent case of *Wenig* v. *Commissioner*, decided July 18, 1949, reversing a memorandum opinion of the Tax Court:

We neither question nor depart from the findings of basic facts as made by the Tax Court. But we think its conclusions are not within the realm of legitimate inference from the record as a whole or from the specific facts found. * * *

Such is my view in the instant case. I do not comprehend the logic of the finding that Mrs. Harmon was not a member of the partnership. She signed the very same partnership agreements that the other members signed. When the business was finally incorporated on or about September 30, 1945, she received her portion of the corporate shares, which was 166, thus clearly indicating that her interest was recognized from the time of the first partnership in 1942 until the business was incorporated in 1945. It is true that Mrs. Harmon did not contribute any capital which "originated with her" as that phrase was used by some prior to the Supreme Court's decision in *Commissioner* v. *Culbertson*, 337 U. S. 733. But the Supreme Court made it clear in the *Culbertson* case that the contribution of so-called "original capital" is not necessary in order for one to become a member of a partnership. On that point, the Supreme Court said:

The Tax Court's isolation of "original capital" as an essential of membership in a family partnership also indicates an erroneous reading of the *Tower* opinion. We did not say that the donee of an intra-family gift could never become a partner through investment of the capital in the family partnership, any more than we said that all family trusts are invalid for tax purposes in *Helvering* v. *Clifford, supra.* The facts may indicate on the contrary that the amount thus contributed and the income therefrom should be considered the property of the donee for tax, as well as general law purposes. * * *

In the instant case the findings of fact of the majority contain the following paragraph:

On July 1, 1942, the effective date of the partnership agreement, Grover F. Kuhlmann and William F. Harmon assigned in equal parts to Daisie E. Kuhlmann, Gladys M. Harmon, Frederick Kuhlmann and Jack D. Harmon all their right, title and interest in a certain account receivable in the sum of $44,330.12, due the assignors as of July 1, 1942, from Boeing Airplane Company, Wichita, Kansas. As of the same date Grover F. Kuhlmann and William F. Harmon gave to each of their respective sons and wives the sum of $8,351.30 in the form of a personal check in that amount delivered to each of them. Grover F. Kuhlmann and William F. Harmon paid gift taxes on these transfers. The four recipients

of these gifts immediately contributed them to the partnership as their capital contributions, so that as of July 1, 1942, the capital account appeared as follows:

| Total | G. F. Kuhl-mann | Daisie E. Kuhlmann | Frederick Kuhlmann | W. F. Harmon | Gladys M. Harmon | Jack D. Har-mon |
| --- | --- | --- | --- | --- | --- | --- |
| $158,790.27 | $40,670.83 | $19,433.83 | $19,433.83 | $40,384.12 | $19,433.83 | $19,433.83 |

If the foregoing facts, taken in connection with other undisputed facts in the record, do not make Gladys a member of the partnership, then I fail to understand the meaning of the Supreme Court's decision in the *Culberston* case. It is my view that the facts of the instant case clearly show that it was the intention of all the parties who signed the partnership agreement that Gladys M. Harmon should become a member of the partnership, that thereafter she was recognized as a partner in the business and did, in fact, become a member, and there is no reason to hold that she was not a partner if the Supreme Court's decision in the *Culbertson* case is to be given effect.

I, therefore, dissent from the majority opinion wherein it holds that Mrs. Harmon was not a partner.

VAN FOSSAN, *J.*, agrees with this dissent.