William C. Maunz v. Commissioner.
Maunz v. Commissioner
Docket No. 22408.
United States Tax Court
1950 Tax Ct. Memo LEXIS 190; 9 T.C.M. (CCH) 427; T.C.M. (RIA) 50134; June 1, 1950
*190 Petitioner, prior to July 1, 1944, operated a heating and fuel oil business as a sole proprietorship. On July 1, 1944, a written partnership agreement was entered into whereby petitioner transferred to the partnership all the assets used in the business conducted by him as a sole proprietorship. In the partnership agreement petitioner, his wife and two other individuals were named as partners. On July 1, 1944, books were set up for the partnership and petitioner's capital account was set up at $40,000 and, on the same date, an interest in the business of $15,000 was transferred to his wife. On December 30, 1945, an interest in the business of $1,000 was transferred on the partnership books to his son. In determining the deficiencies the respondent included in petitioner's taxable income the distributive shares of the proceeds of the partnership allocated to his wife and son. Held, that when the sole proprietorship was converted into a partnership on July 1, 1944, petitioner's wife did not become a bona fide partner in the business. Her only capital contribution was the interest in the business given to her by her husband and she rendered no vital and important services to the partnership. *191 W. F. Harmon, 13 T.C. 373 followed. Held, further, that petitioner's son became a bona fide partner in the enterprise on December 30, 1945. Glenn A. Irvin, Esq., 1728 Liberty Bank Bldg., Buffalo, N. Y., for the petitioner. Robert M. Willan, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The respondent determined a deficiency in petitioner's income tax for the year 1945 in the amount of $3,369.44. The deficiency is primarily due to the action of the respondent in adding to the net income as disclosed by petitioner's return additional income of $6,052.88 designated as partnership income. This adjustment is explained in the deficiency notice as follows: "(a) It is held that additional income, in the amount of $6,052.88, from the partnership known as William C. Maunz Company is includible in your taxable income." Petitioner, by an appropriate assignment of error, contests the correctness of the foregoing determination. The other adjustments made by the respondent are not contested. Findings of Fact Petitioner is an individual who resides at 287 Deerhurst Boulevard, Kenmore, New York. The income tax returns of the petitioner *192 for the taxable year involved were filed with the Collector of Internal Revenue for the 28th District of New York. His returns for the year involved were prepared on the cash basis. Petitioner and his associates are engaged in the heating and fuel oil business. Prior to July 1, 1944, petitioner was doing business as an individual under the assumed name of William C. Maunz Co. He had been engaged in the heating and fuel oil business for about 25 years. Petitioner's place of business prior to July 1, 1944 and during the year involved was at 1397 Jefferson Avenue, Buffalo, New York. During this same period up until a year or so prior to 1944, petitioner was married and resided with his wife, Grace F. Maunz, in an apartment at the same address. Petitioner had about 40 employees during the period immediately prior to July 1, 1944. On July 1, 1944, the petitioner, Grace F. Maunz, Stephen T. Olds and Rose B. Drewery executed written articles of co-partnership. In accordance with section 440 of the Penal Law of the State of New York a certificate was duly filed with the County Clerk of Erie County in which it was stated, among other things, that: "We, WILLIAM C. MAUNZ, GRACE F. MAUNZ, *193 ROSE B. DREWERY and STEPHEN T. OLDS do hereby certify, in pursuance of Section 440 of the Penal Law, that they intend to conduct and transact business at 1307 Jefferson Ave., in the City of Buffalo, New York, under the name of William C. Maunz Co." The certificate was signed by all the foregoing parties. In the partnership agreement of July 1, 1944, petitioner was party of the first part, Grace F. Maunz was party of the second part, Rose B. Drewery was party of the third part and Stephen T. Olds was party of the fourth part. This agreement provided in part as follows: "FIRST: Said Parties agree to form and hereby do form a Co-Partnership for the purpose of carrying on the business of installing and erecting heating systems and the sale thereof, and of fuel oil and of the sale and installation of insulating products, and to continue the business heretofore carried on by the said Party of the First Part on the following terms and conditions to the faithful performance of which they mutually engage and bind themselves. "SECOND: The name and style of said Co-Partnership shall be WILLIAM C. MAUNZ CO., and said Co-Partnership shall commence on the 1st day of July, 1944, and shall continue *194 until legally dissolved. "THIRD: Said Party of the First Part agrees to turn over, and hereby does turn over to said Co-Partnership all the equipment, tools and implements used in connection with the business heretofore conducted by WILLIAM C. MAUNZ, under the assumed name of WILLIAM C. MAUNZ CO., together with all bills receivable belonging to said Party of the First Part in connection with such business heretofore conducted by him, and such bank accounts as may be used in connection with said business, the value of which is hereby fixed for the purpose of this agreement at Forty Thousand Dollars ($40,000.00). "FOURTH: The said Party of the Second Part agrees that she will turn over to said Co-Partnership the sum of Fifteen Thousand Dollars ($15,000.00) (in cash) on the execution of this agreement. * * *
"EIGHTH: It is further mutually understood and agreed that the said Party of the First Part shall devote his working time and services to the management of the Partnership affairs, and as compensation for his services as such manager, he shall receive a monthly salary to be adjusted from time to time, and to be paid before any division of profits and in addition, he shall *195 receive his share of the profits of the business as hereinafter provided. The aforesaid salary shall be paid out of the profits of the business. Such salary shall be accumulative, all accumulative salary shall be payable before any partner is paid his share of the profits. "NINTH: It is further mutually agreed that the said Party of the Fourth Part shall devote his entire working time to the affairs and interests of the Co-Partnership, and shall receive therefor such salary as shall be mutually agreed upon from time to time. Said salary shall have no bearing upon his share of the profits of said Co-Partnership as hereinafter provided. "TENTH: It is further agreed that all losses and debts accrued by the said Co-Partnership shall be borne by the Parties of the First and Second Part in proportion to their interests in the net profits as hereinbefore provided, except that the interest of the Parties of the Third and Fourth Part shall not be returned to them until such losses are liquidated and paid out of General Cash. "ELEVENTH: It is further agreed that the profits accruing from the said Co-Partnership business after deducting therefrom all expenses and outlays contributing to *196 the conduct and management of the business shall be divided between all of the Parties hereto in proportion to the amount contributed to said Co-Partnership business. "TWELFTH: Upon the termination or dissolution of the Co-Partnership, the assets shall be distributed as follows: The Parties hereto shall receive back their respective contributions to the Co-Partnership, subject to the deductions for losses, if any, in proportion to the capital contributed, whether in cash or otherwise; and the assets then remaining after the capital of each partner has been returned in full, together with unpaid accumulations, shall be distributed between and among the Parties of the First and Second Part in proportion to the participation in the profits of the Co-Partnership as hereinbefore provided. "THIRTEENTH: It is further mutually agreed that if any partner, except the Party of the First Part, dies during the existence of the Co-Partnership, such death or deaths shall not dissolve said Co-Partnership unless mutually agreed upon by the surviving partners. The interest of the decedent partner shall terminate on the first day of the calandar [calendar] month next succeeding his death, as of *197 which date, the value of the interest of such decedent partner shall be determined being based upon the amount contributed by such decedent partner, plus such earnings as have accrued on said interest subsequent to the payment of the last dividend. On the death or withdrawal of a partner, no allowance shall be made to him or his personal representatives with respect to the value of the "Good Will" of the business. "FOURTEENTH: It is further mutually agreed that any partner may withdraw from the Co-Partnership at any time by giving to the other partner three (3) months written notice of his intentions so to do. The remaining partners shall have an option to purchase the interest of the withdrawing partner at a valuation which shall not exceed the amount contributed by said withdrawing partner, plus accrued earnings to date of payment from the time of the payment of the last dividend on said interest. "IT IS FURTHER AGREED that all funds of the Partnership shall be deposited to the credit of the Partnership in the Partnership name in such Bank or Banks as shall be determined by the Parties hereto from time to time, and shall be withdrawn by check signed by the party of the first *198 part, and or second part. "The Parties of the Second, Third and Fourth Parts agree that he and/or she will not, during the continuance of the Partnership, in the name of the Partnership, make, draw or endorse, accept or sign any check, promissory note, draft, bill of exchange, bond or obligation of any description for the accommodation of any other person, firm or corporation." Petitioner's principal reason for forming the partnership was to satisfy the demands of Stephen T. Olds, his sales manager, that he be allowed to obtain an interest in the business. On July 1, 1944, books were set up for the partnership and petitioner's capital account was set up at $40,000. On July 1, 1944, petitioner's account was debited for $15,000 and a like amount was credited to the wife's account on the partnership books. Petitioner's wife had no money of her own prior to the time the partnership was formed in July 1944. On March 15, 1945, petitioner filed a gift tax return acknowledging that he, as donor, had made a gift of the value of $15,000 to his wife represented by an "Interest of Fifteen Thousand Dollars in business of William C. Maunz Co., 1397 Jefferson Ave., Buffalo, N. Y." The date *199 of the gift was stated to be February 1, 1944. On the same date petitioner's wife filed a donee's information return of gifts for the year 1944 in which she acknowledged the receipt of the above gift of an interest of $15,000 in the business of William C. Maunz Co. Petitioner's wife could not withdraw the $15,000 after it was credited to her account. A capital account in the amount of $2,200 was set up on the partnership books for Rose Drewery on July 1, 1944. This represented an amount which she had invested in the proprietorship and which was carried over to the partnership books when they were set up. A capital account in the amount of $3,000 was set up on the partnership books for Stephen T. Olds on July 1, 1944. Of this amount, $2,500 was in cash and the amount of $500 represented commissions due Olds from the proprietorship of William C. Maunz Co. Harold W. Maunz is petitioner's son by a former marriage and during the taxable year was 26 years of age. Harold's mother died in 1929 without a will, having an interest in the property located at 1397 Jefferson Avenue, Buffalo, New York, on which petitioner was conducting a heating and fuel oil business prior to July 1, 1944, and *200 which property continued into and was used in the partnership business in 1945. Upon his mother's death Harold and his sister acquired an interest in said property, together with petitioner. Sometime prior to 1945, in order to clear the title, Harold conveyed his interest in this property to petitioner. In July 1945, while Harold was home on vacation petitioner discussed with him his becoming a partner in the business and it was agreed that in order to compensate him for conveyance of his interest in the above property, petitioner would transfer to him a $1,000 interest in the partnership. On December 30, 1945, Harold was credited with a $1,000 interest in the partnership as of January 1, 1945. Harold did not contribute any services to the partnership in 1945 as he was employed as a mechanical engineer at Oak Ridge, Tennessee. Petitioner's wife had no specific duties to perform in connection with the partnership business. During the fuel oil season which began in November and ended about March of each year, she assisted petitioner in taking care of the work in connection with the rationing of fuel oil. The business had approximately 2,000 customers and petitioner's wife would assist *201 in the work of pulling the necessary ration stamps, pasting them on the customers' sheets and making the necessary record of the tickets. There were several girls at the office who were engaged in this work and petitioner's wife helped whomever she could. During the busy season she went to the office some weeks every day and other weeks three or four times a week. On some occasions it was necessary to perform this work at home, where she was assisted by her daughter and maid, and occasionally she accompanied petitioner to the office and did the work there. She took service calls that came to their residence relating to the business and relayed them to the proper parties. She checked the salesmen's accounts about once a week with reference to amounts sold and commissions earned. She also gave petitioner advice on general business matters. Petitioner employed a regular bookkeeper who was in charge of the records and three or four girls were employed for various clerical duties. These girls received about $35 per week. After the agreement of July 1, 1944, petitioner continued to control and manage the business as he had done before, with the exception that Olds was allowed greater discretion *202 and control in carrying out his position as sales manager. Petitioner's salary for the taxable year was fixed at $7,500. The partnership duly filed a partnership return for the year 1945 reporting the names of the partners as William C. Maunz, Grace F. Maunz, Harold W. Maunz, Rose B. Drewery and Stephen T. Olds. The distributive shares of the profits of the business as shown by the partnership return for that year was as follows: William C. Maunz
$16,759.13
Grace F. Maunz
5,786.96
Harold W. Maunz
385.80
Rose B. Drewery
1,157.39
Stephen T. Olds
8,794.33
Grace F. Maunz made no drawings upon income credited to her in 1945 during the year 1945, and only one drawing upon the income credited to her in 1944 which was made in July 1945 for $1,500. However, she drew against her account on the partnership books on January 21, 1946, the amount of $4,000 and on March 19, 1946, the amount of $1,397.84. In addition, during 1946, $2,000 was transferred into capital stock of a new corporation and a check in the amount of $489.33 was issued to her which cancelled out the account. The above amounts which were paid to Grace F. Maunz were deposited in her separate bank account *203 and were reported by her in her income tax return for 1945. Harold F. Maunz was paid the above amount of $385.80 and it was reported by him in his income tax return for the year 1945. The partnership was dissolved in the Spring of 1946 and a corporation was formed to take over the assets of the partnership. Grace F. Maunz and Harold received stock in the corporation as representing their interest in the partnership assets. Grace F. Maunz was not a partner in the operation of the business of William C. Maunz Co. in 1945. Harold W. Maunz was not a partner in the operation of the business of William C. Maunz Co. prior to December 30, 1945. On that date he became a member of the partnership and should be recognized as such. Opinion BLACK, Judge: The sole issue in this proceeding is whether Grace F. Maunz, petitioner's wife, and Harold W. Maunz, his son, should be recognized in the taxable year 1945 as partners with petitioner in a partnership doing business as William C. Maunz Co. Respondent does not dispute that William C. Maunz Co. was operated as a partnership during the taxable year and he has recognized petitioner, Stephen T. Olds and Rose B. Drewery as partners but has refused *204 to give recognition to petitioner's wife and son as partners and has taxed their interest in the partnership profits to petitioner. The question of whether a bona fide partnership existed between petitioner, his wife and son depends upon whether the parties in good faith and acting with a business purpose intended to join together as partners in the present conduct of the enterprise. ; . In , the Court points out that intent is to be determined from a consideration of the agreement, the conduct of the parties in execution of its provisions, their statements, the relationship of the parties, their respective abilities and capital contribution, the actual control of income and the purposes for which it is used and any other factors throwing light on their true intent. Petitioner contends that his wife and son were bona fide partners in the William C. Maunz Co. during 1945. He contends that his wife contributed her share of the accumulated assets of the former business by an actual transfer of this interest on the books to the new partnership *205 and by the acceptance of a valid gift from her husband of that amount and that she performed vital and valuable services in the operation of the business. Petitioner further argues that he was obligated to his son for the release of certain property which became an asset of the business of the partnership, the value of which was fixed at $1,000, and in July 1945 while his son was home on vacation from a position which he held at Oak Ridge, Tennessee, it was agreed that he should have an interest in the partnership to the extent of the sum of $1,000. The evidence herein shows that the principal reason for forming the partnership was to satisfy the demands of Stephen T. Olds, his sales manager, that he be allowed to obtain an interest in the business. On July 1, 1944, a partnership agreement was entered into which, among other things, provided that Grace F. Maunz was to contribute $15,000 in cash on the execution of the agreement. The record shows, however, that she had no capital of her own prior to the time the partnership was formed in July 1944 and she did not contribute any new or original capital to the enterprise. The record shows that after the partnership books were set up *206 there was transferred to her on the partnership books an interest in the partnership of $15,000, and petitioner's interest was reduced from $40,000 to $25,000. The fact that petitioner's wife received her interest in the partnership as a gift from petitioner would not alone prevent her from being a partner, for as , points out: "The fact that transfers to members of the family group may be mere camouflage does not, however, mean that they invariably are. The Tower case recognized that one's participation in control and management of the business is a circumstance indicating an intent to be a bona fide partner despite the fact that the capital contributed originated elsewhere in the family. If the donee of property who then invests it in the family partnership exercises dominion and control over that property - and through that control influences the conduct of the partnership and the disposition of its income - he may well be a true partner. * * * In the Tower and Lusthaus cases we distinguished between active participation in the affairs of the business by a donee of a share in the partnership on the one hand, and his passive acquiescence *207 to the will of the donor on the other. This distinction is of obvious importance to a determination of the true intent of the parties. * * *" The Tower case, supra, recognized that whether or not a wife substantially contributed to the control or management of the business, or otherwise performed vital additional services, is a circumstance indicating an intent to be a bona fide partner. Petitioner's wife had no specific duties to perform in connection with the daily business of the partnership. Her activity consisted principally in assisting in the rationing program as it affected the business. Her assistance in this program consisted of pulling ration stamps from large sheets, pasting them on the customers' sheets, and making a record of the tickets. She assisted in this work whenever she had time. During the busy season which was from November to March in each year, she went to the office some weeks every day and other weeks three or four times a week. On some occasions it was necessary to do this work at home where she was assisted by her daughter and maid. The evidence shows that clerical help was also employed to do this work. In addition she took service calls that came to *208 their residence relating to the business and relayed them to the proper parties. She also checked salesmen's accounts about once a week with reference to amounts sold and commissions earned. There is no doubt that these services were helpful and of value but we do not think that they were vital additional services or substantial contributions to the control and management of the business within the meaning of the terms as used by the Supreme Court in As for the petitioner, the partnership agreement provides that he was to devote his working time to the management of the partnership affairs and thus shows that he had no intent of relinquishing any of his control over the business, except to confer some additional authority to Olds. We think that the evidence as a whole shows that the income of the business was still produced mainly through the efforts of the petitioner and the capital already in the business prior to July 1, 1944. Respondent in support of his contention that Grace F. Maunz should not be recognized as a member of the partnership in 1945 strongly relies upon our decision in . The writer *209 of the opinion in the instant case dissented in the Harmon case and wrote a dissenting opinion in which he expressed the view that the majority opinion was contrary to the reasoning of the Supreme Court in the Culbertson case, supra. However, the majority of our Court was not in accord with that minority view and decided that Gladys M. Harmon was not a member of the partnership which was there involved. We feel that the Harmon decision is controlling here. While there are some differences in the facts of the instant case from those which were present in the Harmon case, we do not feel that the facts here are any stronger for the taxpayer than they were for the taxpayer in the Harmon case. Therefore, following the Harmon case, we hold that Grace F. Maunz was not a partner in the operation of the William C. Maunz Co. for the year 1945. Cf. , affirmed . One of the cases strongly relied upon by petitioner in support of his contention that Grace F. Maunz should be recognized as a partner is the case of . We think that case is distinguishable on its facts. There *210 the property interest which Mrs. Middlebrook contributed as her capital interest in the partnership was received from her husband several months prior to any discussion of the formation of a partnership. In addition to that fact, we found on the evidence that Mrs. Middlebrook rendered important and vital services to the partnership during the taxable years which were there in issue. In that case the wife was authorized to and did sign checks on the firm's bank account; she signed installment leasesale contracts assigned to General Motors Acceptance Corporation; she signed transfer title certificates to cars and leases and renewals thereof for two buildings used in the operation of the business. She had a desk and telephone at the place of business. She was consulted and participated in discussions with respect to the policies of the business and, in some instances, the partners accepted her views. For a time she handled the advertising for the service department of the business which was the sales and service of automobiles. For the foregoing reasons, we think the Middlebrook case is clearly distinguishable on its facts from the instant case. There is evidence to the effect that *211 respondent, in the computation of the net income of this same partnership of William C. Maunz Co. for the year 1944, while not recognizing Grace F. Maunz as a partner, did recognize that she had rendered the partnership some services of value in connection with its fuel oil rationing requirements and allowed a deduction of $600 for these services rendered by her in the computation of partnership net income. The evidence in the instant proceeding is to the effect that Grace F. Maunz in the year 1945 rendered about the same sort of services to the partnership in connection with its fuel oil rationing requirements as she did in 1944. Therefore, in the computation of partnership net income for 1945, under Rule 50, $600 should be allowed as a deduction on account of the services rendered by Grace F. Maunz to the partnership in 1945. Petitioner's claim that Harold was a bona fide partner in 1945 is based upon the contention that petitioner was obligated to Harold for the release of an interest in certain property which became an asset of the business of the partnership. Petitioner contends that the value of this interest was fixed at $1,000. Petitioner must rest his case for sustaining *212 a partnership as to Harold on a contribution of capital since he admittedly did not perform any services for the business in 1945 as he was employed at Oak Ridge, Tennessee. The record shows that Harold's mother died in 1929, having an interest in the property at 1397 Jefferson Avenue on which petitioner was conducting a fuel and oil business as a sole proprietor prior to July 1, 1944, and which property continued into and was used in the partnership in 1945. In order to clear the title to this property Harold conveyed his interest in this property to petitioner prior to 1945 and petitioner agreed that he would be compensated for this interest. In July 1945, when Harold was on vacation petitioner discussed with him the possibility of his becoming a partner but no agreement was made at that time as to when he was to become a partner. On December 30, 1945, petitioner transferred to Harold on the partnership books a $1,000 interest in the partnership in consideration of his prior conveyance of his interest in the Jefferson Avenue property. From the evidence it appears that this was agreeable to Harold and on that date, therefore, he made a contribution of capital to the partnership in *213 the amount of $1,000. The fact that petitioner acquired Harold's interest in the Jefferson Avenue property prior to 1945 and that this property was used in the partnership business during 1945, does not in any way advance the date of the acquisition by Harold of an interest in the partnership. While petitioner might have intended that Harold was to become a partner prior to December 30, 1945, nevertheless, such intention did not become effective until some action was taken with respect to Harold's acquiring an interest in the partnership which was done on December 30, 1945, when the interest in the partnership was transferred to him on the partnership books. Upon a consideration of all the facts, we conclude that it was intended that Harold W. Maunz was to be a bona fide partner in the business of William C. Maunz Co. on December 30, 1945. The entry on the partnership books crediting Harold with a $1,000 interest in the partnership "as of January 1, 1945" could have no retroactive effect. Harold did not become a partner until December 30, 1945. Cf. . According to the rule observed in the Zukaitis case, Harold should be recognized as a partner *214 in 1945 for only two days and his part of the partnership income allocable to these two days is taxable to him and not to petitioner. Decision will be entered under Rule 50.