T.C. Memo. 1998-296


UNITED STATES TAX COURT


TERRY F. AND CAROL J. ZDUN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12933-96.                    Filed August 17, 1998.


<u>William P. Koontz</u>, for petitioners.

<u>Kathey I. Shaw</u> and <u>Ann M. Murphy</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


PARR, <u>Judge</u>:  Respondent determined deficiencies in, and penalties on, the Federal income tax for 1992, 1993, and 1994 of Terry F. Zdun (petitioner) and Carol J. Zdun (Mrs. Zdun) as follows:

| Year | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|------|------------|---------------------------------------|
| 1992 | $6,668 | $1,334 |

| 1993 | 9,683 | 1,937 |
| 1994 | 10,019 | 2,004 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All dollar amounts are rounded to the nearest dollar, unless otherwise indicated.

After concessions by the parties,[1] the issues for decision are: (1) Whether petitioners' apple orchard activity and dentistry activity should be treated as one activity or two separate activities for purposes of section 183, and whether petitioners' apple orchard activity was engaged in with the intent to make a profit within the meaning of section 183 during the years at issue. We hold petitioners' apple orchard activity and dentistry activity are two separate activities within the meaning of section 183. We further hold petitioners' apple orchard activity was not engaged in with a profit objective under section 183. (2) Whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for 1992, 1993, and

---

[1] Respondent determined that petitioner was an employee of a denturist from whom he rented an equipped office, rather than a self-employed dentist. In the notice of deficiency, respondent disallowed petitioners' self-employment tax deductions of $1,027, $993, and $747 for 1992, 1993, and 1994, respectively. After trial, respondent conceded that petitioner was self-employed during the years at issue.

1994.  We hold they are.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated into our findings by this reference.  At the time the petition in this case was filed, petitioners were married and resided in Tiller, Oregon.

The Dentistry Activity

Petitioner has been licenced to practice dentistry since 1967, and is licensed to practice in California, Michigan, and Oregon.  In addition to a consulting office in his home, petitioner maintains dental offices in Grants Pass and Medford, Oregon.  Mrs. Zdun, who is a qualified dental assistant, assists petitioner when he sees patients at their home office. Throughout the years at issue, petitioner devoted 3 days a week to his dental practice.

Petitioner practices what he calls holistic dentistry. According to petitioner, an organic apple is a special fruit rich in vitamins, antioxidants, and bioflavonoids that contribute to the health of gums and oral tissues.  Thus, he counsels his

---

[2]  At the end of trial, respondent moved orally to increase the amount of the deficiency for each year if the Court found that petitioner was self-employed.  The Court denied this motion. We hold, however, that to the extent the amount of each deficiency is not increased, petitioners are liable for self-employment tax on petitioner's self-employment income.  See secs. 1401 and 1402.

patients to eat organic apples for their dental health.

The Apple Orchard Activity

In 1982, petitioners moved from California to a 151-acre homestead they purchased in Tiller. In the following year, petitioners cleared the indigenous growth from 5 acres surrounding their house and planted apple trees. The trees began producing fruit sometime in the mid-1980's, and petitioner estimates that he had 150 to 170 mature trees during the years at issue. In 1992, however, due to a hard freeze, which is not uncommon at the elevation of petitioners' property, no apples were produced. Petitioner estimates that the trees produced approximately 40,000 pounds of fruit in 1993 and 1994.

Petitioners do not hire any labor to help with the orchard; petitioner does all the heavy work, including picking the apples. Mrs. Zdun, who has a bad back, works at least 4 hours in the orchard each day during the apple season, July through December.

Although petitioner estimates that the orchard produced 40,000 pounds of apples during 1993 and 1994, he did not pick all the apples that were produced. Instead, he picked only the best apples and threw away many of the others.

Although organic apples are available for purchase in the areas where petitioner practices, it has been his experience that his patients will eat the apples only if they are made easily available to them. To facilitate his patients' access to organic

apples, petitioner grows the apples, picks and bags them, and then takes the bags to his offices for sale to his patients. Thus, petitioner considers his apple orchard an integral part of his dental practice.

Petitioner testified that he has tried, but prefers not, to sell the apples commercially. Some of the apples have suffered injury from insects and are otherwise marked which makes much of his fruit less valuable on the commercial market; thus, in petitioner's opinion the profit margin from commercial sales is not good. Instead, he prefers to grow the best, most nutritious apples that he can and provide them to his patients. If a patient cannot afford to purchase the apples, petitioner gives them to the patient without charge. Petitioner estimates that of all his patients, only 10 or 15 percent avail themselves of the apples. There is no question that petitioners have never made a profit with respect to the apple orchard activity during their 14-year involvement with the fruit.

Petitioners' Tax Returns

Petitioners formed a partnership, Twin Creeks Organic Farm, in 1992. Petitioners are the only partners in the partnership. For reporting purposes, petitioners combined their dentistry activity gross receipts with their apple orchard activity income and expenses on one Form 1065 (U.S. Partnership Return of Income). In each of the years at issue, petitioners reported the

income and expenses from the apple orchard activity on Schedule F
(Profit or Loss From Farming) and attached the schedule to Form
1065.  In 1992 and 1993, petitioners reported the income from the
dental practice on Schedule C (Profit or Loss From Business),
which was attached to petitioners' Form 1040.[3]  In 1992,
petitioners transferred the dental practice income from Schedule
C to the Form 1065 filed by Twin Creeks Organic Farm, reporting
the dental practice income as if it were partnership gross
receipts, and then netted that amount with the apple orchard
losses.  In 1993, petitioners transferred the dental practice
income from Schedule C to Schedule F, as farm income, and
attached Schedule F to Form 1065.  In 1993 and 1994, petitioners
netted the income from the dentistry activity with the apple
orchard activity income on Schedule F and reported that net
amount as partnership income on Form 1065.

Petitioners reported dentistry activity gross receipts and
apple orchard activity income and expenses as follows:

| Item | 1992 | 1993 | 1994 |
|------|------|------|------|
| Gross receipts: | | | |
| Dentistry | $57,920 | $68,400 | $67,600 |
| Apple orchard | -0-[1] | 1,700[2] | 850[2] |
| | | | |
| Expenses incurred: | | | |
| Farm expenses[3] | ($23,008) | ($56,052)[4] | ($57,887)[4] |
| Other expenses | (19,462)[5] | | |

---

[3]  The record does not show whether petitioners filed a
Schedule C (Profit or Loss From Business) with their Form 1040
(U.S. Individual Income Tax Return) for 1994.

1 In 1992, petitioners improperly reported $500 of gross income from the farm on Schedule F; this amount represents the unrealized increase in value of their horse.  The amount of revenue from the sale of apples, or any other farm related activity, was $0.

2 Although petitioners reported sales of farm products of $1,700 and $850 on Schedule F in 1993 and 1994, respectively, an unknown portion of the amount reported in 1993 and $700 of the amount reported in 1994 was for the estimated value of apples they consumed.

3 These amounts are taken from part ll of petitioners' Schedule F.

4 These amounts are the totals of the farm expenses reported on line 35 of petitioners' Schedules F.  The reported expenses include a deduction for "Other expenses", which was reported separately on line 34a of the schedules filed for 1993 and 1994. The amount of the Other expenses was $18,590 in 1993 and $22,455 in 1994.

5 This "Other expense" was reported on line 20 of petitioners' Form 1065.  The expenses were itemized on a self-made schedule titled "Twin Creeks Organic Farm", which was attached to the partnership return.


OPINION

Issue 1.  The Apple Orchard Activity

The first issue for decision is twofold: (1) Whether petitioners' apple orchard activity and dentistry activity should be treated as one activity or two separate activities for purposes of section 183; and (2) whether petitioners' apple orchard activity was engaged in with the intent to make a profit within the meaning of section 183(a).  Respondent determined that petitioners' apple orchard activity is a separate and distinct undertaking from the dentistry activity, and furthermore petitioners engaged in the apple orchard activity with no bona fide objective of profit.  We agree.

Separate or Single Activity

Section 1.183-1(d), Income Tax Regs., provides, where the taxpayer is engaged in several undertakings, each of these may be a separate activity, or several activities may constitute one activity. In ascertaining whether two or more activities of the taxpayer may be treated as one activity, we consider all of the facts and circumstances, including the degree of organizational and economic interrelationship, the business purpose served by the undertakings together or separately, and the similarity of the undertakings. Id.; see also Schlafer v. Commissioner, T.C. Memo. 1990-66. The Commissioner will generally accept the characterization by the taxpayer of several undertakings either as a single activity or as separate activities. Sec. 1.183-1(d), Income Tax Regs. The taxpayer's characterization will not be accepted, however, when it appears that his or her characterization is artificial and cannot be reasonably supported under the facts and circumstances of the case. Id. If two undertakings are treated as separate activities, deductions and income from each separate activity are not aggregated either in determining whether a particular activity is engaged in for profit or in applying section 183. Id.

Respondent determined that petitioners' apple orchard activity is separate and distinct from the dentistry activity. Petitioner asserts that the two undertakings are related in that he cannot practice holistic dentistry without his apple orchard.

Respondent's determinations are presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

An examination of the entire record fails to reveal any evidence linking the two undertakings. Petitioners' trees produce apples from August through December, and petitioners testified that they have no facility for cold storage of the fruit, yet petitioner is able to practice dentistry all year round. Furthermore, petitioner testified that only 10 or 15 percent of his patients actually take his apples, even when he provides the apples to them for no cost. The evidence does not support a conclusion that the apple orchard is necessary to either his dental practice or his patients. Thus, we find no degree of organizational or economic relationship between the two undertakings. Moreover, we do not accept petitioner's testimony that a business purpose is served by carrying on the apple orchard activity and dentistry activity together as a single activity, nor do we find any similarity between the two.

In light of the criteria stated in section 1.183-1(d), Income Tax Regs., and considering the facts and circumstances of the instant case, we find that petitioners' apple orchard activity and dentistry activity are two separate and distinct activities within the meaning of section 183 as determined by respondent.

Apple Orchard Not Engaged In For Profit

As we have decided that petitioners' undertakings are two separate activities, we now consider the income and expenses of the apple orchard activity separately in deciding whether the apple orchard activity was conducted with a profit objective. Section 183(a) generally limits the amount of expenses that a taxpayer may deduct with respect to an activity "not engaged in for profit" to the deductions provided in section 183(b). Section 183(b)(1) provides that deductions that would be allowable without regard to whether such activity is engaged in for profit are to be allowed.  Section 183(b)(2) further provides that deductions which would be allowable only if such activity were engaged in for profit are to be allowed, but only to the extent that the gross income derived from such activity during the taxable year exceeds the deductions allowable under section 183(b)(1).  An activity is "not engaged in for profit" if it is an activity other than one with respect to which deductions are allowable for the taxable years under section 162 or under paragraph (1) or (2) of section 212.  Sec. 183(c).

In determining whether an activity is engaged in for profit, the taxpayer must show that he or she engaged in the activity with an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without

opinion 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).  Although the taxpayer's expectation of a profit need not be reasonable, he or she must have a good faith objective of making a profit.  Dreicer v. Commissioner, supra at 645; Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. on another issue 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(a), Income Tax Regs.  Petitioners bear the burden of proving the requisite intent.  Golanty v. Commissioner, supra at 426. Whether a taxpayer is engaged in an activity with the requisite profit objective is determined from all the facts and circumstances.  Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Golanty v. Commissioner, supra at 426; sec. 1.183-2(a) and (b), Income Tax Regs.  Petitioners assert that they engaged in the apple orchard activity with the objective of making a profit; however, more weight is given to objective facts than to the taxpayers' mere statement of their intent.  Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

The regulations promulgated under section 183 list the following nine factors that should normally be taken into account in determining whether an activity is engaged in for profit:  (1) The manner in which the taxpayer carried on the activity, (2) the expertise of the taxpayer or his advisers, (3) the time and effort expended by the taxpayer in carrying on the activity, (4)

- 12 -

the expectation that the assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on similar or dissimilar activities, (6) the taxpayer's history of income or loss with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) the extent to which elements of personal pleasure are involved. Sec. 1.183-2(b), Income Tax Regs. The list of factors in the regulations is not exclusive, and other factors may be considered in determining whether an activity is engaged in for profit. No single factor is determinative. Golanty v. Commissioner, supra at 426; sec. 1.183-2(b), Income Tax Regs. The determination of a profit objective does not depend on counting the number of factors that support each party's position. Dunn v. Commissioner, supra at 720; sec. 1.183-2(b), Income Tax Regs.

A review of the entire record in this case persuades us that petitioners have failed to carry their burden of proving that their apple orchard activity was engaged in for profit. We find that all of the above enumerated factors weigh against petitioners.

First, the manner in which the taxpayer carries on the activity is one indication of whether a profit objective exists. Sec. 1.183-2(b)(1), Income Tax Regs. Elements relevant to this factor include whether the taxpayer maintained complete and

accurate books and records, whether the activity was conducted in a manner substantially similar to comparable businesses that are profitable, and whether changes were attempted in order to improve profitability. Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979).

Petitioners assert that they have maintained records for their activities. However, their books of account for the apple orchard consist of their bank deposit slips, check stubs, and tax forms. Petitioners have two bank accounts, one in the name of petitioner and the other in the name of Twin Creeks Farm. Petitioner testified that when he received money, from whatever source, he deposited it in whichever account needed the money. He further testified that he used both accounts as family accounts.

Petitioners did not present any production records for the apple orchard. In fact, at trial petitioner was not even certain of the exact number of trees in the orchard. Thus, we find that petitioners kept no separate complete and accurate books or production records for the orchard activity.

Although petitioners' tax preparer, Susan Bladorn-Dukes, testified that petitioners' canceled-checks method of recording income and expenses was much like that of other farmers for whom she prepares tax returns, she also testified that most of those farms were "absolutely not" self-supporting. Thus, we do not

find that petitioners' apple orchard activity is an activity carried on in a manner substantially similar to other activities of the same nature which are profitable.

Petitioner testified that he made several changes in the manner of operating the orchard. For example, he discontinued spraying ground-up insects on the trees as a method of pest control because it was too labor intensive. He also changed his ground cover from a fescue type to a clover type because the clover returns more nitrogen to the ground, allowing him to forgo chemical fertilization. Finally, he replaced the overhead-irrigation system he had installed previously with a ground-level system.

Although these changes may have reduced petitioners' labor burden, there is no evidence that the changes were made so that the activity would become more profitable, or that the changes were the abandonment of unprofitable methods. For instance, petitioner testified that the ground-up insect method is an effective method of pest control, but he abandoned it because it was too much work. Petitioner did not provide any evidence of the cost effectiveness of his present method of pest control compared to the abandoned method. Nor did petitioner proffer any evidence that he was actually using chemical fertilizers before he changed the type of ground cover; therefore, there is no evidence that the change was an abandonment of an unprofitable

method in an attempt to improve profitability. Thus, we do not conclude that these changes indicate a profit motive.

It is clear from the record that petitioners failed to maintain complete and accurate books and records for the apple orchard activity, did not conduct the activity in a manner substantially similar to other comparable, profitable businesses, and did not make changes in order to improve profitability. Accordingly, we find this factor weighs against petitioners.

Second, preparation for the start of an activity through extensive study of its accepted business, economic, and scientific practices, or consultation with those who are experts therein indicates that the taxpayer has entered into the activity for profit. Sec. 1.183-2(b)(2), Income Tax Regs. Petitioner testified that although he had never raised any type of commercial farm product before he and Mrs. Zdun purchased the Tiller property, he had, however, "dabbled" in organic gardening with his father and another man on 1 or 2 acres in Santa Maria, California. Petitioner testified that he had attended shows and exhibits on organic gardening, as well as a course on how to prune fruit trees. In addition, petitioner consulted with his neighbor, who has 2,000 trees, about how to grow trees in his area. Finally, petitioner received advice about planting his trees from the company in Michigan from which he ordered the trees.

Petitioner's testimony indicates that his preparation for the apple orchard activity was casual, intermittent, and short-term, rather than extensive. Petitioner did not mention how attending the shows, exhibits, course on pruning trees, or conversations with his neighbor in any way aided petitioners in making the apple orchard activity profitable. Furthermore, there is no evidence in the record that petitioners conducted a thorough investigation into the profitability of their apple orchard activity. They did not present evidence that they had a business plan, or that they had made projections of revenue, expenses, or profits that they expected would be generated by the apple orchard activity. It is unlikely that one would incur such substantial expenses with respect to an activity, which he or she intends to be profitable, without first making a complete investigation of how to do so. Pederson v. Commissioner, T.C. Memo. 1994-555. Accordingly, we find this factor weighs against petitioners.

Third, the time and effort expended by the taxpayer in carrying on the activity is an indication of whether a profit motive existed. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioners did expend time on their apple orchard activity as Mrs. Zdun testified that she spent 4 hours each day during the apple season, and petitioner testified that he spent between 500 and 600 hours per year. Although the time that petitioners spent

in the orchard was not extensive,[4] it was apparently enough to grow approximately 40,000 pounds of apples during 1993 and 1994. Petitioner testified that he did all of the picking himself; however, he did not pick all of the apples. Thus, petitioner did not make sufficient effort to profit by the time that he and Mrs. Zdun spent in the orchard for the Court to find that making a profit was the motive for their time in the orchard. We find that this factor weighs against petitioners.

Fourth, an expectation that the assets used in the activity may appreciate in value is an indication of a profit motive. The term "profit" encompasses an appreciation in the value of assets, such as land, used in an activity. Thus, the taxpayer may intend to derive a profit from the operation of the activity, and may also intend that, even if no profit from current operations is derived, an overall profit will result when appreciation in the value of land used in the activity is realized since income from the activity together with the appreciation of land will exceed expenses of operation. Sec. 1.183-2(b)(4), Income Tax Regs. Petitioner asserts that one of the reasons he planted the trees was to increase the value of the Tiller property, and that the apple orchard has increased the property value by a minimum of

---

[4] On an annual basis, petitioner spent between 9 and 12 hours per week in the orchard.

$500 per tree.  Petitioners therefore assert that the appreciated value of the land plus the trees will more than offset any losses they take on current tax returns.

Other than petitioner's self-serving testimony, there is no evidence on record to support his assertion of the value of the trees.  Although as coowner of the apple trees, petitioner is qualified to testify as to their value, we are not required to, and we do not, accept his self-serving testimony on this point. Harmon v. Commissioner, 13 T.C. 373, 383 (1949).

Even if we accepted, arguendo, petitioner's valuation of the apple trees, and that petitioners have held the Tiller property with the expectation of making an overall profit from the operation due to the appreciation of the value of the land, this factor would still not favor petitioners.  The last sentence of section 1.183-2(b)(4), Income Tax Regs., cross-refers to paragraph (d) of section 1.183-1 for a definition of an activity in this connection.  Section 1.183-1(d)(1), Income Tax Regs., provides:

> Where land is purchased or held or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value.  Thus, the farming and holding of the land will be considered a single activity only if the income derived from farming exceeds the deductions attributable to the farming activity which are not directly attributable to the holding of the land (that is, deductions other than

those directly attributable to the holding of the land such as interest on a mortgage secured by the land,

annual property taxes attributable to the land and improvements, and depreciation of improvements to the land).

It is clear from petitioners' Schedules F that the costs attributed to the orchard activity (apart from those directly attributable to the holding of the land) substantially exceed the income from the apple sales.  Thus, petitioners do not satisfy the test set forth in section 1.183-1(d), Income Tax Regs., for combining their farming activity with their holding of the land into a single profit-motivated activity.  We find that this factor weighs against petitioners.

Fifth, the fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in an activity for profit even though the activity is presently unprofitable.  Sec. 1.183-2(b)(5), Income Tax Regs.  Petitioners have never before engaged in commercial farming of any type.  We find that this factor weighs against petitioners.

The taxpayer's history of income, losses, and occasional profits with respect to an activity can be indicative of a profit objective.  Sec. 1.183-2(b)(6) and (7), Income Tax Regs.  The presence of losses in the formative years of a business is not inconsistent with an intention to achieve a later profitable level of operation, bearing in mind, however, that the goal must

be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup the losses that have meanwhile been incurred in the intervening years.  Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).  We find it significant that although petitioners' trees have been bearing enough fruit to sell to the public since the mid-1980's, at no time during petitioners' involvement in the apple orchard activity did they realize a profit.  Given the record of losses over the 3 years at issue, we see no possibility that petitioners ever intended to be able to recoup their substantial expenditures.  Accordingly, we find these factors weigh against petitioners.

Substantial income from sources other than the activity in question may also be an indication of the lack of a profit objective especially where losses from the questioned activity produce substantial tax benefits.  Sec. 1.183-2(b)(8), Income Tax Regs.  Petitioner quite successfully carried on a part-time dentistry practice earning more than $193,000 during the years at issue.  With such an income, petitioners could well afford a hobby farm, particularly when it is partially financed through the tax benefit derived from taking the losses.

Finally, the presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for

profit, especially where there are recreational or personal elements involved. Sec. 1.183-2(b)(9), Income Tax Regs. In his testimony, petitioner described the orchard in terms of how it relates to petitioners' house. He described how the trees are planted right up to the house, and how the air is filled with the perfume of the blossoming trees. It is clear from petitioner's testimony that petitioners planted the orchard with the intent of living in a house nestled among flowering trees, and that they derive great personal pleasure from living in the idyllic setting they created.

An activity will not be treated as not engaged in for profit merely because the taxpayer derives personal pleasure from engaging in the activity if the activity is in fact engaged in for profit as evidenced by other factors. Id. The record in this case, however, is entirely bereft of any evidence that petitioners engaged in the activity with an honest and actual objective of making a profit. Thus, we find that this factor weighs against petitioners as personal pleasure is the dominant factor in their undertaking the activity.

Accordingly, on the basis of all the facts and circumstances of the instant case, and the factors considered in section 1.183-2(b), Income Tax Regs., we find that petitioners did not have an actual and honest objective to make a profit with respect to the organic apple orchard activity within the meaning of section 183.

Issue 2.  Accuracy-Related Penalty Under Section 6662

Respondent determined that petitioners are liable for accuracy-related penalties pursuant to section 6662 of $1,334, $1,937, and $2,004 for 1992, 1993, and 1994, respectively. Respondent asserts that the section 6662(a) penalty in each year is due to a substantial understatement of tax.  See sec. 6662(b)(2).  Petitioners assert that they are not liable for the section 6662(a) penalty, because they reported all of their income and the correct amount of tax for each of the years at issue.

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment of tax attributable to one or more of the items set forth in subsection (b).  Section 6662(b)(2) provides that section 6662 shall apply to any portion of the underpayment attributable to any substantial understatement of income tax.  There is a substantial understatement of income tax if the amount of the understatement for the taxable year exceeds the greater of (1) 10 percent of the tax required to be shown on the return, or (2) $5,000.  Sec. 6662(d)(1)(A).  For purposes of section 6662(d)(1), "understatement" is defined as the excess of tax required to be shown on the return over the amount of tax that is shown on the return reduced by any rebate.  Sec. 6662(d)(2)(A).

After adjustments,[5] respondent determined that the amounts of tax required to be shown on the returns are $7,701, $9,994, and $9,473, and that the amounts of the understatements of tax are $6,668, $9,683, and $10,019, for 1992, 1993, and 1994, respectively. As each of these amounts exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000 for the year at issue, respondent applied the penalty at issue. Petitioners assert that there was no understatement, and that if the Court finds there was substantial understatement, the penalty should not apply because reporting all of their income and deductions on their tax returns is adequate disclosure.

Section 6662(d)(2)(B) provides that the amount of the understatement shall be reduced by the portion of the understatement that is attributable to tax treatment of any item if: (1) There is or was substantial authority for such treatment; or (2) if the relevant facts affecting the item's treatment are adequately disclosed in the return or in a statement attached to the return.[6]

---

[5] In addition to disallowing certain deductions, respondent determined that computational adjustments should be made which would preclude petitioners from claiming the earned income credit during the years at issue.

[6] This subsection was amended by Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, sec. 13251(a), 107 Stat. 531, effective with respect to returns the due dates for which (determined without regard to extensions) are after Dec. 31, 1993. The amended subsection provides, in part, that the
(continued...)

Respondent's regulations provide two types of disclosure under section 6662(b)(2):  Disclosure in attachments attached to the return, sec. 1.6662-4(f)(1), Income Tax Regs., and disclosure on the return, sec. 1.6662-4(f)(2), Income Tax Regs.  Petitioners did not attach a statement to their return; therefore we look to the return to decide whether disclosure was adequate.

The Commissioner may by annual revenue procedure (or otherwise) prescribe the circumstances under which disclosure of information on a return in accordance with applicable forms and instructions is adequate.  Sec. 1.6662-4(f)(2), (5), Income Tax Regs.  The Commissioner issued Rev. Proc. 93-33, 1993-2 C.B. 470 (extending the application of Rev. Proc. 92-23, 1992-1 C.B. 737, to 1992 returns), Rev. Proc. 94-36, 1994-1 C.B. 682, and Rev. Proc. 94-74, 1994-2 C.B. 823, for tax years using 1992, 1993, and 1994 tax forms, respectively, which identify circumstances under

---

[6](...continued)
understatement shall be reduced by that portion of the understatement which is attributable to
    (ii) any item if--
        (I) the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return, and
        (II) there is a reasonable basis for the tax treatment of such item by the taxpayer.

Thus, for 1993 and 1994, petitioners must not only adequately disclose the relevant facts affecting the item's tax treatment, but must also have a reasonable basis for such tax treatment.  Due to our  finding that petitioners did not disclose the relevant facts affecting the item's tax treatment, we do not address whether petitioners had a reasonable basis for the tax treatment of the item.

which the disclosure on a taxpayer's return of a position with respect to an item is adequate disclosure for purposes of reducing the understatement of income tax under section 6662. The expenses claimed by petitioners are not within the safe harbor provided by the revenue procedures. If the revenue procedure does not include an item, disclosure is adequate with respect to that item only if made on a properly completed Form 8275 or 8275-R, as appropriate, attached to the return for the year. Sec. 1.6662-4(f)(2), (5), Income Tax Regs. Petitioners did not attach either form to their returns. Therefore, listing the expenses related to the apple orchard activity on the tax returns does not, by virtue of the revenue procedures, constitute adequate disclosure under section 6662(d)(2)(B).

On their returns, petitioner reported his occupation as "Farmer/Dental Nutrition", and Mrs. Zdun reported her occupation as "Farmer/Nutrition Expert". Petitioners transferred the income from the dentistry activity from Schedule C (Profit or Loss From Business) to Schedule F (Profit or Loss From Farming), which was attached to Form 1065 (U.S. Partnership Return of Income), and then back to Form 1040. We note that petitioners' method of reporting dental practice income grossed up the farm income, providing the apple orchard activity with the appearance of a

profit-making activity.[7] Reporting income actually earned as a dentist as income earned from an apple orchard is misrepresentation, not disclosure.

We conclude that petitioners have failed to provide adequate disclosure for purposes of section 6662(d)(2)(B), and we find that petitioners are liable for the accuracy-related penalty for each of the years at issue.

Decision will be entered

under Rule 155.

---

[7] For example, in 1993 the apple orchard activity generated actual sales of less than $1,700, yet petitioners reported net farm profit of $14,048 by including petitioner's $68,400 of dentistry income on Schedule F as farm income.