Earl Rhine v. Commissioner.
Rhine v. Commissioner
Docket No. 18786.
United States Tax Court
1950 Tax Ct. Memo LEXIS 30; 9 T.C.M. (CCH) 1078; T.C.M. (RIA) 50290; November 28, 1950
*30 Petitioner, his wife and daughter were shareholders in a corporation. Upon corporate dissolution the parties invested their liquidation dividends in a partnership with an 80-10-10 basis in accordance with the respective amounts contributed by each. Respondent refused to recognize the partnership for taxation purposes and taxed all the income to petitioner. Held, the parties intended to and did create a bona fide partnership, valid for taxation purposes. Peter L. Wentz, Esq., for the petitioner. Frank M. Cavanaugh, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $61,116.36 in petitioner's income tax for the year 1944. The issue which we have to decide is whether the Commissioner erred in refusing to recognize petitioner's wife and daughter as members of a partnership with petitioner and in treating petitioner as a sole proprietor. Findings of Fact Petitioner is an individual residing in Oelwein, Iowa. The income tax return for the period here involved was filed with the collector of internal revenue for Iowa. Petitioner and Mertie Rhine (hereinafter referred to as Mertie) were married *31 in 1912, at which time neither had accumulated any property or money. In 1916, after having worked as a salesman selling mineral feeds for livestock, petitioner went into business for himself under the name of the Oelwein Chemical Company, manufacturing mineral feeds for livestock. This business was operated as a sole proprietorship on a very small scale, with an initial capital of about $500 which petitioner had been able to accumulate since his marriage. A small building near home was occupied as a plant and the office was at home. During the week petitioner would be on the road selling the products and on week-ends he would prepare the orders of the previous week. The office work was handled by Mertie and consisted of buying, selling, making out checks, invoices, bills of lading, etc., typing correspondence, and maintaining a simple type of bookkeeping. As the business grew, employees were added to help in the plant, and in about 1918, a part-time office worker was hired. About a year later a full-time office worker, Miss McGee, was employed, who was still with the firm during the taxable year. By 1920, another clerk was added and Mertie worked occasionally, but not regularly, nor *32 routinely. In 1928, the firm was incorporated and petitioner exchanged his assets for 997 shares of stock. In addition, two shares were issued to Miss McGee, and one to Mertie. Petitioner was president, Miss McGee was secretary-treasurer, and Mertie was vicepresident. Mertie's service to the corporation was in an "advisory" capacity. She would appear at the office several times a week and look over reports, but she had no assigned desk nor specific tasks. There were frequent business discussions between petitioner and Mertie at their home, at the office, and with the corporation's accountant. Petitioner's daughter, Mardelle, helped with the clerical work in the evenings after school. In 1931, after completing junior college and two summers of stenographic instruction, she worked full time for the corporation for several months as a stenographer. In 1933, Mardelle married Lyle Palmer (hereinafter referred to as Lyle) who, after learning the business, became sales manager of the corporation. In 1936, petitioner gave his daughter 20 shares of corporate stock. During the corporate existence there were frequent business discussions, often of an informal nature, at which petitioner, *33 Mertie, Mardelle, Lyle, and Mr. Stebbins, the firm's accountant, would be present. The meetings occurred at the corporation's office, Mr. Stebbins' office, or the home of the Rhines or the Palmers. In 1941, the corporation showed a marked increase in profits and Mr. Stebbins suggested dissolution in order to eliminate the corporate tax on excess profits. This suggestion was considered and discussed for over a month. At the same time, the thought of giving his wife and daughter a share in the business was broached by petitioner so that they would have some legal ownership in and income from the business. His primary desire was to give them an independent income. To carry this thought out, on October 25, 1941, petitioner transferred to Mertie 99 shares of the corporation's stock, and to Mardelle 80 shares with the intent to vest full, complete and irrevocable ownership of the stock in each of them. Certificates were issued for these amounts in Mertie's and Mardelle's names. Each woman then had 100 shares and petitioner had 800 shares. [1] A gift tax return was filed for this stock early in 1942. On October 25, 1941, the *34 corporation's directors voted that the corporation be dissolved as of the close of business on October 31, 1941. During the period dissolution plans were being considered, plans to establish a partnership consisting of petitioner, Mertie and Mardelle were also made. Both women knew of these plans, but prior to October 25, 1941, neither was aware she was to get any stock in the corporation before dissolution. The same day the gift was made, the rights and liabilities of a partner were explained to all the parties and the women were both clearly informed that the stock was theirs to do with as they pleased. Upon liquidation each could take out her interest, worth about $20,000, or she could invest it in the non-corporate business and become a partner. Both women chose the latter course and on October 25, 1941 (the same day as the gifts were made) petitioner, Mertie, and Mardelle entered into a partnership agreement which provided that the parties owned the stock in the corporation on an 80-10-10 ratio. The agreement further provided: "AND WHEREAS, upon dissolution of said Oelwein Chemical Co., Inc., the assets thereof will be distributed to the above owners of stock in said corporation *35 and on the basis of said ownership the assets of said corporation will be distributed eighty percent (80%) to said Earl Rhine, ten percent (10%) to said Mertie Rhine and ten percent (10%) to said Mardelle Rhine Palmer in exchange for the stock owned by said parties as above set out, "WITNESSETH, that said parties hereby mutually covenant and agree as follows: "That said parties hereto become partners in the business of the Oelwein Chemical Co. upon the terms hereinafter expressed, that is to say: "1. That the assets of said partnership shall consist of the entire assets of the Oelwein Chemical Co., Inc., which is dissolving as of the close of business October 31, 1941. "2. That said partnership shall be owned as follows: eighty percent (80%) of the partnership and all the net assets of said partnership by Party of the First Part, namely, Earl Rhine, ten percent (10%) of the partnership and all the net assets thereof by Party of the Second Part, namely, Mertie Rhine, and ten percent (10%) of the partnership and all the net assets thereof by Party of the Third Part, namely, Mardelle Rhine Palmer. "3. That the partnership shall commence on the first day of November, 1941. *36 "4. That the style or firm name of the partnership shall be the Oelwein Chemical Co. "5. The business of said partnership shall be to continue the business as formerly conducted by the Oelwein Chemical Co., Inc. "6. It is mutually agreed and understood that Party of the First Part, namely, Earl Rhine, in consideration of services rendered in connection with the business of the Oelwein Chemical Co. shall be allowed an annual salary of Twenty-Five Thousand & no/100 ($25,000.00) Dollars. "7. It is mutually agreed and understood that Party of the Second Part, namely, Mertie Rhine, in consideration of services rendered in connection with the business of the Oelwein Chemical Co. shall be allowed an annual salary of Three Thousand & no/100 ($3000.00) Dollars. "8. It is mutually agreed and understood that Party of the Third Part, namely, Mardelle Rhine Palmer, in consideration of services rendered in connection with the business of the Oelwein Chemical Co. shall be allowed an annual salary of Three Hundred & no/100 ($300.00) Dollars. "9. It is mutually agreed and understood that when any distribution of earnings is made, after partners' salaries are provided for, said distribution *37 shall be on the basis of the ownership in this partnership, as above set out, that is, eighty percent (80%) of said earnings to Earl Rhine, ten percent (10%) of said earnings to Mertie Rhine and ten percent (10%) of said earnings to Mardelle Rhine Palmer. "10. It is mutually agreed and understood that the partnership herein is an unlimited partnership and as such is subject to and under the laws of the State of Iowa." While the agreement is silent as to the partnership liability and sharing of losses, clause 10, supra, was intended to cover such problems, namely, that the partnership was "unlimited", carrying with it all that the term denotes legally. On December 5, 1941, undivided interests in the realty of the corporation were conveyed to petitioner, Mertie and Mardelle in proportion to the interest of each; i.e., 8/10 - 1/10 - 1/10, respectively. These deeds were recorded in February, 1942. In addition, a trade name certificate, required by Iowa law, setting forth the names of the partners as Earl Rhine, Mertie Rhine and Mardelle Rhine Palmer was filed November 5, 1941. The partnership of Oelwein Chemical Company duly filed partnership returns of income (Form 1065) for the *38 year in controversy and for prior years, reporting the names of the partners as Earl Rhine, Mertie Rhine and Mardelle Rhine Palmer, and the distribution of income to them. After the partnership formation, Mertie and Mardelle showed about the same degree of activity as during the corporation days. There were frequent meetings at which problems, usually brought up by petitioner, were considered. Such things as new warehouses, methods of distribution, promotion of sales in new States, sales plans and organization were discussed. Petitioner would have been able to get their advice even if they had not been partners. While the final decision generally rested with petitioner, in no instance did he act contrary to the wishes of his wife or daughter. On one occasion, when he was considering moving the office to Chicago and opening up an eastern plant there, the plan was abandoned due to the disapproval voiced both by Mertie and Mardelle. In recognition of his greater services and experience petitioner was paid a salary of $25,000 per year as compared with the $3,000 per year paid Mertie and $300 per year paid to Mardelle. Each woman testified that she felt the amount paid her was commensurate *39 with the services she rendered. Neither Mertie nor Mardelle had any regular work to do, nor did either have an assigned desk at the office. Each would come in several times a week and do whatever was necessary, sometimes staying only a short time, sometimes staying the whole afternoon, looking at reports, going over financial statements, etc. Mertie showed only a meager knowledge of such things as the products manufactured or the number of persons employed. Mertie and Mardelle had authority to draw checks on the business account, but never exercised this right. Mardelle would accompany her husband at times on sales meetings and would help him out, sit in on meetings, or entertain any wives of salesmen who were present. During the period of the partnership she did not go as often as before since she had two children. Separate accounts were set up for each of the parties. Salaries and profit distributions were credited to each account. Personal taxes were paid by the partnership and then charged to the appropriate party's account. Net total credits and charges for the year in controversy were as follows: 1944
Total Cash
Balance
Total
Withdrawal
Blance
Jan. 1, 1944
Credit
and Taxes
Dec. 31, 1944
Mertie Rhine
$16,081.33
$ 34,177.53
$ 46,754.90
$ 3,503.96
Mardelle Palmer
20,066.32
31,477.53
49,911.36
1,632.49
Earl Rhine
- 8,262.95
274,420.28
227,428.08
38,729.25
*40 Distributions in prior years were on the same basis and there were similar charges and credits. Profits were distributed once a year. Neither woman ever asked for her share but relied upon the amount suggested by petitioner who was advised by the accountant, Mr. Stebbins. Mertie placed her money in a checking account upon which only she could draw checks. She never gave petitioner any money or investments purchased therewith. Household expenses were paid from petitioner's personal account with checks drawn either by him, Mertie or Miss McGee. Mertie used her money for investments, principally United States government bonds, all of which were kept in a safety deposit box to which only she had access. She was never advised by petitioner as to the kind of investments to make, nor did she inform him of what use she made of her money. Mardelle placed her money in a joint checking account upon which either she or Lyle could draw. She never gave petitioner any money and used it principally for investments. Advice as to type of investments was primarily received from her Chicago broker. Petitioner never gave her any advice. Her securities were placed in a safety deposit box to which *41 only she and Lyle had access. The Oelwein Chemical Company is both a manufacturing and selling organization. Its success is largely dependent upon the selling job in respect to its product. Neither petitioner's wife nor daughter ever participated as a saleswoman, but during the period here involved neither did petitioner himself. There was no increase in sales, lines carried, etc., due to the fact that his wife and daughter came into the business. However, capital was required to purchase material and equipment necessary for manufacture and delivery. The partnership of Oelwein Chemical Company was a bona fide partnership and was so intended by the three partners who signed the agreement on October 25, 1941. The partners in 1944 were Earl Rhine, Mertie Rhine and Mardelle Rhine Palmer. The petitioner duly reported in his 1944 Federal income tax return his distributive share of the partnership income computed in accordance with the partnership agreement, including the salary of $25,000 which he received under the terms of the agreement. Opinion RICE, Judge: The sole issue is whether during the taxable year a valid partnership for tax purposes existed between Earl Rhine, Mertie *42 Rhine, and Mardelle Rhine Palmer. This is a question of fact to be determined from all the facts and circumstances of record. In Commissioner v. Culbertson, 337 U.S. 733, the Court laid down the rule that the intent of the parties is the governing principle and is to be determined by an examination of all the factors leading up to the formation of the partnership and said (p. 742): "* * * the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent" should be considered in determining whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Looking at all the facts in this case, we conclude that there was a bona fide intent by the parties that the business be conducted as a partnership. When, in the fall of 1941, petitioner was informed by his accountant that it would be advisable tax-wise for him to dissolve *43 the corporation and thereby avoid the excess profits taxes of the period, it was unnecessary that a partnership be formed, since he could have merely returned to the sole proprietorship of his pre-corporation days. The facts show that it was at petitioner's own suggestion and because he wanted his wife and daughter to "have an interest in the business" that he suggested the formation of a partnership. This was carried out on the 80-10-10 ratio and had his sole motive been one of tax benefit the percentage interests would undoubtedly have been more equal. When the stock of the corporation was given to Mertie and Mardelle it was made clear to them that they had the choice of taking money upon liquidation or of investing their share in the contemplated partnership. The fact that they chose the latter course does not, therefore, make the gifts conditional ones. They were complete and irrevocable. For this reason, this case can be distinguished from Commissioner v. Tower, 327 U.S. 280, and, in this respect, is similar to Edward A. Theurkauf, 13 T.C. 529 (1949). In the Tower case, stock was given the taxpayer's wife on the condition she invest liquidating dividends *44 received thereon in a partnership to be formed upon corporate dissolution. Since the gift was conditional and the wife performed no services, the partnership was held invalid. In the Theurkauf case, a valid partnership was found to exist between a husband and wife where the latter, performing no services, was found to have made a valid contribution of capital of which she was the full and legal owner at the time she made it even though this capital was from liquidating dividends of the corporation, the stock of which had been given her by her husband several weeks prior to liquidation and resulting partnership formation. The intent of the partners as found in the Tower case, supra, was distinguished on the ground that in that instance the gift had been conditional, and in the Theurkauf case unconditional. In the instant case, the gift was unconditional. Capital, which Mertie and Mardelle contributed to the partnership, was under the facts of this particular case their own and originated with them. In W. F. Harmon, 13 T.C. 373 (1949), it was held that a contribution of capital given by petitioner to his wife from his distributive share of partnership profits was not sufficient *45 to make her a partner since from all the facts it was found that there was no intent on the part of the active partners that she be one. Her only activity was to attend partnership meetings, and this was felt to be insufficient since the partnership agreement provided that management of the business be vested in her husband and another active partner. Hence, it was determined that she did not really participate in the business but passively acquiesced in whatever was decided. That situation can be distinguished from the one in the instant case. Here, there was a full understanding on the part of petitioner that all three partners would have a voice in the business. There was ample testimony of frequent policy meetings between petitioner, his wife and daughter at which full discussions of problems of the business were carefully and completely considered. While it was admitted that in most instances the ultimate decision rested with petitioner, the women being content to rely on his greater experience and knowledge, they testified that in one instance when they strongly disagreed with a suggestion, it was abandoned. It was a matter of public record that the business was a partnership *46 and that petitioner, Mertie and Mardelle were partners. This was true since both the warranty deeds of undivided interest in the realty of the former corporation and the trade-name certificate were public documents and recorded properly. There is sufficient testimony, both by the parties to the partnership agreement, by the accountant and by the attorney who drew up the agreement, that there had been a full explanation of what being an "unlimited partner" meant and that it was fully understood by the parties to the agreement, both in regard to management of the business and any instance of partnership liability. There is no question that the income received by Mardelle and Mertie was theirs to use as they desired and that they did use it only for themselves. It was placed in banking accounts to which petitioner had no access, personal investments were made with it and no household expenses were paid with such money. All these factors are indicative of what was said in the Culbertson case, supra, at 747, "if the donee of property who then invests it in the family partnership exercises dominion and control over that property - and through that control influences the conduct of the *47 partnership and the disposition of its income - he may well be a true partner. Whether he is free to, and does, enjoy the fruits of the partnership is strongly indicative of the reality of his participation in the enterprise." For the reasons above stated, we hold that the parties intended a bona fide partnership and conducted their business in a method consistent therewith, and that the Commissioner erred in assessing all the profits of the Oelwein Chemical Company to Earl Rhine, the petitioner in this case. Since other adjustments were made by respondent in his determination herein, petitioner's additional tax liability, if any, should be recomputed in accordance with the foregoing opinion. Decision will be entered under Rule 50. Footnotes
1. The record is silent as to what happened to Miss McGee's two shares.↩