*Decision will be entered under Rule 50.*

H. V. FUNAI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20884. Promulgated November 2, 1949.

*Robert J. Heberle, Esq.*, for the petitioner.
*Paul E. Waring, Esq.*, for the respondent.

**OPINION.**

HARLAN, *Judge*: Viola Funai contributed no actual cash originating with her to the capital of Marshall Poultry Co. The small and undetermined contribution from her savings which she advanced to petitioner in his first partnership venture was exhausted when petitioner started his individual proprietorship in 1934. However, by very hard work on the part of Viola and her husband, the capital of his individual proprietorship was built from zero in 1934 to $1,825 on May 10, 1940. Viola had worked conscientiously and for long hours in the

management of the grocery and in the supervision of employees. Her services were vital to the business enterprise and above those of a salaried employee.

However, there is not the slightest evidence in the record that Viola Funai, in rendering the services to her husband's business, had a remote idea that she was acting as her husband's partner, and from all of the facts in this record Viola performed her activities in the promotion of her duties as a wife and her interest in increasing the family income. Certainly her husband had no idea of a partnership relationship between him and his wife, as he filed individual income tax returns and did not hold his individual proprietorship out to the public as a partnership. In fact, even after the agreement entered into with Whitehead in May of 1940 the petitioner had no idea of filing partnership returns as between him and Viola until he was advised to do so by a representative of the Internal Revenue Department. It is interesting to note, furthermore, that the agreement with Whitehead does not indicate an intent by the Funais to establish a partnership relationship between themselves. The agreement provided that H. V. Funai and Viola Funai, parties of the first part, jointly owned two-thirds of the business and L. J. Whitehead owned the other one-third. There is no statement in said agreement that Viola Funai in her individual capacity has any interest in the partnership and H. V. Funai in his individual capacity was designated as "having complete control of the operation of said business." There is no question that as between H. V. Funai and L. J. Whitehead a partnership did exist and that so far as the public relationship was concerned Viola was represented as also being a partner in the business, but as between Viola and H. V. Funai the evidence that these two individuals intended to operate as a partnership is decidedly tenuous. All of the acts that she performed after the partnership with Whitehead were probably less arduous but of exactly the same character as those which she did while her husband was under his individual proprietorship. At both times she bought supplies for the business, had authority to write checks, employed and discharged help, and performed other necessary functions in the business, but she did these things in the same way in the Whitehead partnership as she did in the individual proprietorship.

In November 1942 an agreement was made between Funai and his wife, as one party, and L. J. Whitehead and his wife Rhea, as the other party, whereby the Whiteheads acquired an additional 16⅔ per cent interest in the business and whereby each of the parties should thereafter receive one-fourth of the profits. This agreement did not provide when the new partnership was to begin, but petitioner testified that it was to be as of January 1, 1943. By the time of the agreement the grocery business was abandoned and the entire efforts of the part-

nership were concentrated on the poultry business. A line of dressed poultry was added and Viola became more active in the poultry division.

Moreover, the entire record herein wholly fails to show that from 1940 on through the taxable years Viola Funai exercised that most important privilege and that normal function of a partner—the receipt and control for her own use and benefit of any of the partnership profits. The only possible exception to this statement might be the February 4, 1941, check issued to Viola for $300 and cashed at the Morris Plan Bank. However, the account at this bank was a joint account of petitioner and Viola and from all of the evidence it is apparent that petitioner dominated and controlled the joint account. There is nothing in the evidence to show that this deposit was any exception. So far as the testimony and evidence in this case are concerned, it seems apparent that the petitioner herein controlled and dominated the income of the partnership and the partnership capital to the extent of the interest of the petitioner and his wife, just as he did prior to 1940, when he was operating as an individual proprietorship. In our opinion this complete control of partnership income and partnership capital by the petitioner is a strong factor in removing the petitioner's business from the tax benefits of a partnership relationship between him and his wife during the taxable years. "It is the command of the taxpayer over the income which is the concern of the tax laws." *Commissioner* v. *Tower*, 327 U. S. 280.

In the case at bar Viola, by her industry and ability prior to the taxable years, contributed largely to the creation of the income of Marshall Poultry Co., but there is no persuasive evidence before us that she ever actually received for her own disposition any part of that income. Three dividend checks payable to her and endorsed by her are in evidence. Two were deposited in the bank to the credit of H. V. Funai. The other one was cashed at the Morris Plan Bank, where she and her husband kept their joint account. The only bank account referred to in the record as being in her name was arranged by her husband, according to his testimony, not that she might have an independent bank account, but that the family funds could be in three accounts of less than $5,000 each and thus be protected by insurance. There was no testimony that Viola had anything to do with opening the account, that she ever deposited anything therein, or that she ever withdrew anything therefrom.

After 1940 petitioner's income from rentals, interest, and dividends, as disclosed by his personal income tax returns, grew very rapidly. The money producing these investments came from Marshall Poultry Co. Viola's income tax returns meanwhile were constantly confined to

the declared income from the alleged partnership. Petitioner testified unconvincingly that the real estate from which his rentals came was purchased in the joint names of himself and wife, but this was not corroborated in any way and Viola said nothing on the subject. The stocks and bonds purchased by petitioner admittedly from Marshall Poultry Co. income, from which substantial capital gains and ordinary income were received, are not claimed by petitioner to be the joint property of petitioner and his wife.

No capital account was set up on the partnership books and there is no evidence in the record that as between petitioner and Viola any capital account was ever recognized. The petitioner received the money in all cases when capital items were sold and would not testify as to what disposition was made of this money. There is no evidence in the record that any of it ever came under the control of Viola. When she was on the stand it was noticeable that her attorney did not require of her concerning the receipt by her of the partnership income or of any part of the money received from the disposal of partnership capital. Neither did she volunteer any testimony on this most important issue before the Court.

The partnership report for 1942 strongly indicates that both H. V. Funai and L. J. Whitehead were more interested in making a report that would be beneficial tax-wise than accurate as to details. According to petitioner's testimony, the four-party partnership was not to start until January 1, 1943. If so, the 1942 partnership report should have declared 33⅓ per cent of the income to each of the three former partners and Rhea Whitehead would have received none. However, if the partnership began on November 11, 1942, when the agreement was dated, Funai, his wife, and L. J. Whitehead would each have received one-third of the partnership income for five-sixths of a year and one-fourth thereof for one-sixth of a year, or a total of 32 per cent of the income, and Rhea would have received one-fourth of one-sixth, or 4 per cent of the income. The report as filed, however, divides the income 32 per cent each to the Funais and 18 per cent each to the Whiteheads. This division does not seem to have any basis in any theory of the case before the Court, although it would no doubt be helpful in filing the income tax returns of the Whiteheads. Furthermore, since there is nothing in the evidence showing that Rhea contributed anything either to capital or services, it is interesting to note that her share, at least on paper, of the partnership income equals Viola's. There is thus an atmosphere of unreality about the division of this partnership income which seems to indicate that H. V. Funai and L. J. Whitehead were not greatly interested in the actual distribution of income to their respective wives. Furthermore, when

Whitehead purchased his one-third interest for $5,200, petitioner was unable to testify as to what disposition was made of the money or as to whether Viola received any part thereof. The same condition is true as to the amounts received by petitioner in final liquidation of the partnership. Whitehead received his half, but there is no indication that Viola received anything. The bill of sale of the business name "Marshall Poultry Company" was drawn up between Williams and petitioner as individuals and signed by petitioner as an individual in exactly the same manner as though that name had never become a partnership asset.

From the whole record, it is our conclusion that the Funai portion of the partnership income during the taxable years was received by petitioner and treated by him as his own income to the same extent as if his wife were but an employee.

If this Court were to find, under the facts in this record, that a bona fide partnership for tax purposes existed in the taxable years between Viola Funai and H. V. Funai, it would fail to follow the law as laid down by the Supreme Court of the United States in the recent case of *Commissioner* v. *Culbertson*, 337 U. S. 733, in which the court says:

The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, *the actual control of income and the purposes for which it is used,* and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise * * * [Italics supplied.]

See also *Commissioner* v. *Tower, supra.*

In the case at bar the evidence that Viola Funai ever received under her own dominion and control any of the funds arising from the alleged partnership business, or that she ever rendered any service to the business except to perform her duty as a helpful wife and to advance her family welfare, is purely negligible, if any, and it is certainly not sufficient to overcome the presumption of the correctness of the Commissioner's finding that as a matter of fact the business relationship between petitioner and his wife was not that of a functioning partnership. We can only conclude that the apparent family partnership between petitioner and his wife was not intended by the parties thereto to be a real functioning partnership during the taxable years.

Reviewed by the Court.

*Decision will be entered for the respondent.*