C. T. McMurtry v. Commissioner. Vera McMurtry v. Commissioner.
C. T. McMurtry v. Commissioner
Docket Nos. 25973, 25974, 27968, 27969.
United States Tax Court
1951 Tax Ct. Memo LEXIS 53; 10 T.C.M. (CCH) 1056; T.C.M. (RIA) 51322; October 29, 1951
*53 The association of the petitioner-husband and two foster sons in the cattle business, held, to be a valid partnership for Federal income tax purposes. Arthur Glover, Esq., and Walter G. Russell, C.P.A., 310 Amarillo Bldg., Amarillo, Tex., for the petitioners. Donald P. Chehock, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined deficiencies in income tax for the calendar years 1946 and 1947 as follows: Docket
No.
Petitioner
Year
Deficiency
25973
C. T. McMurtry
1947
$12,375.90
27969
C. T. McMurtry
1946
6,340.80
25974
Vera McMurtry
1947
12,375.90
27968
Vera McMurtry
1946
6,340.80
These deficiencies resulted from respondent's determination that a valid partnership for Federal income tax purposes did not exist between C. T. McMurtry and his two foster sons, Clyde Slavin and Pat Slavin, for the years 1946 and 1947, and therefore the income from the business enterprise was in fact the income of C. T. McMurtry alone during the taxable years. The case was submitted on oral testimony and exhibits, and the proceedings were consolidated for the purpose of *54 the hearing. Findings of Fact Petitioners, C. T. McMurtry and Vera McMurtry, husband and wife, were married December 22, 1927, and are residents of Clarendon, Texas. Their individual income tax returns for 1946 and 1947 were filed with the collector of internal revenue for the second district of Texas, at Dallas, on a community property basis. Since the transactions involved in these proceedings pertain particularly to C. T. McMurtry, he will hereinafter be referred to as petitioner. Both Vera and C. T. McMurtry had been previously married; Vera had two children, Clyde Slavin, born August 11, 1914, and Patrick Slavin, born November 14, 1920, by her former marriage. Petitioner had three children by his first marriage, but all three had passed on prior to 1930. After the marriage of C. T. McMurtry to Vera, both boys lived at the ranch with Vera and C. T. McMurtry, but were not adopted by the petitioner. At the age of seventeen, in 1895, petitioner left home and moved to the Panhandle of Texas where he worked as a ranch hand. He filed on his first land in 1903, and a few years later, as his land holdings increased, began his own cattle business. Petitioner's cattle business is *55 principally buying and selling cattle rather than raising a herd. By 1930 petitioner's property included a farm, a ranch (approximately 27,000 acres), 18 miles from Clarendon, and another ranch at Romero, Texas. During the next ten years petitioner had as many as 2,000 head of cattle at a time on this property. By the end of 1945, in addition to the above property, he leased and operated a 6,400-acre ranch near Memphis, Texas, and also with his brother, J. L. McMurtry, as a partner, operated a 6,000-acre ranch at Ashtola, Texas. At that time petitioner ran approximately 4,000 head of cattle. The growth of petitioner's business can be attributed to years of diligent work and business acumen in his cattle transactions. However, as he grew older, in his late sixties, he tended to withdraw from the vigorous and exhaustive physical work of the ranch. During this time, in conversations with business associates, he discussed the formation of a business partnership with his two foster sons, Clyde and Pat Slavin. From their earliest days at Clarendon, Clyde and Pat worked with the petitioner; at first doing only the petty chores, but as they became more experienced in the operation of the *56 ranch they assumed the arduous and more responsible jobs. They worked side by side with petitioner and his other employees. Even while they were at school weekends and vacations found them working at the ranch and learning the cattle business. Clyde Slavin in 1934 was graduated from the University of Texas with a Bachelor of Arts degree. Later he received a teacher's certificate from San Marcos Teachers College, and then he taught at a school on petitioner's ranch. He lived on the ranch, and when he was not teaching, worked there. In 1939 Clyde received a law degree from the University of Texas. Later, in 1940, after a few months at the ranch, Clyde opened a law office in Clarendon. He supplemented his income from the law practice with a job as Federal Range Inspector for Donley County, Texas. While at law school, and in the immediate years following, Clyde bought and sold a limited number of cattle for himself and also in partnership with his brother. Clyde was married in 1941, and later he enlisted in the United States Navy. Pat, the younger brother, had a natural aptitude for the cattle business. His practical experience, gleaned from work at the ranch under petitioner's supervision *57 and guidance, was supplemented by the study of animal husbandry for approximately two years at Texas A. & M. and Texas Tech. Pat left college in 1940, and returned to work at the ranch; petitioner paid him $150 a month. Pat was married in 1941 and his salary was increased $50 a month. For the next twelve months and prior to his enlistment in the Navy, Pat continued to work at the ranch. After their tour of duty in the Navy, the boys returned to the ranch in September and October, 1945. They were unsettled and undecided as to their future. Pat, who had been a Naval aviator, thought about flying in China; Clyde thought about practicing law and insurance adjusting. Added to this uncertainty was the petitioner's inability to do the physical work connected with the ranch. During this period of unrest petitioner suggested to the boys that the three of them form a partnership, operate the ranch, and divide the profits. Petitioner said that each could contribute his individual skill, knowledge, or property to the partnership, and thus together insure the growth of their cattle business. On about January 1, 1946, petitioner, Clyde and Pat agreed to and executed a partnership agreement. This *58 agreement was prepared by Clyde, and provided that petitioner would receive 50 per cent of the profits and each of the foster sons 25 per cent. The execution of the agreement brought about no immediate change in the operation of the ranch. However, there was a change within the year. Petitioner, who had moved to Clarendon, oversaw the operation of the ranch. Pat, with his family, moved on the ranch and did the actual physical work of operating the ranch. Clyde assumed the administrative responsibilities and acted as legal counsel and bookkeeper for the business. When the need arose Clyde also worked with Pat in the physical operation of the ranch. Petitioner bought and sold the greatest portion of the cattle in the first year but on many occasions Pat joined with the petitioner in these transactions. According to the partnership agreement the three individuals continued to do business under the name of C. T. McMurtry. And though not mentioned in the agreement, all new cattle were branded with the "hip O" brand; petitioner, as an individual, had used this brand prior to the execution of the partnership agreement. All checks, whether drawn for the individual expenses of petitioner, *59 or for some of the expenses of the two boys and their families, or for expenses incurred in the operation of the ranch, were paid from the checking account of C. T. McMurtry. Clyde and Pat drew checks on this account, but signed these checks "C. T. McMurtry" by Clyde or Pat Slavin. All moneys received by and through the operation of the ranch were paid into the C. T. McMurtry account. The bank was apprised of the partnership agreement, but signature cards were never executed by the boys. However, checks signed by them for C. T. McMurtry were honored at the bank. No actual distribution of profits in accordance with the partnership agreement, was ever made. Cancelled checks evidenced that approximately $10,000 was drawn from the C. T. McMurtry account for Clyde's benefit and use, and approximately $4,300 for Pat's benefit and use. These actual receipts included a monthly salary of $150 and a Christmas bonus. A partnership return of income for 1946 filed in the name of C. T. McMurtry indicated the partners' shares of income as follows: C. T. McMurtry, $24,748.18; Clyde, $12,374.09; Pat, $12,374.09. The discrepancy in distributive shares and actual receipts resulted from an oral agreement *60 between petitioner, Clyde and Pat to the effect that any money not needed by the individual would be left in the partnership. When additional operating money was required, petitioner negotiated the loans and pledged his individual property as collateral. Petitioner had retained the ownership of the ranch lands and improvements thereon, and therefore could pledge this property as security for the loans. Petitioner had contributed the ranches' operating equipment to the partnership. Petitioner and Pat in 1946 devoted their entire time to the operation of the ranch. Clyde had a limited law practice, but devoted the greater part of his time to the ranch. Adjoining Clyde's law office, in Clarendon, was the C. T. McMurtry office where the books and files pertaining to the operation of the ranch were kept. Even though the written partnership agreement was effective for only one year, there was an additional parol agreement to continue operating under the terms of the written agreement, if at the end of the year all parties were satisfied. At the end of 1946 all parties were satisfied and did continue as agreed. Sometime in 1947 Clyde became familiar with the original Tax Court decision *61 in William O. Culbertson, Sr. (Memorandum Opinion entered June 24, 1947 [6 TCM 692]). As a result of this decision, he became apprehensive that their own partnership agreement would be disallowed for tax purposes. He then prepared two contracts of employment, one for himself with the petitioner as employer, and the other for Pat with the petitioner. When the petitioner saw these contracts, he did not wish to sign them; however, upon Clyde's assurance that the new contract would not alter or rescind the existing agreement, petitioner executed the contracts of employment. The division of profits in these contracts was identical to that established in the partnership agreements, viz.: 50 per cent to the petitioner and 25 per cent to each of the boys. It was the specific intent of each of the parties, petitioner, Clyde and Pat, to continue operating under the partnership agreements notwithstanding the two employment contracts. During 1947 there was noticeable change in the operation of the ranch. Indicative of this change was the fact that the net income of the business increased from an average during the years 1941 to 1945 of approximately $37,000 to approximately $76,000 *62 in 1947. Though petitioner and Pat often bought and sold cattle together, Pat alone in a great many instances, exercising his own judgment and discretion, bought and sold cattle. All exchanges of moneys were made through the C. T. McMurtry account. Petitioner became less actively engaged in the management of the ranch and the two boys assumed the additional burden. Clyde in 1947 served as county judge of Donley County. He was actively engaged in his judicial capacity some four or five days a month. The greatest part of his time was devoted to his work concerning the ranch. In this year, for the partnership, petitioner leased from E. C. Houghton an additional 46,000 acres of ranch land, and made a purchase of some 1,800 head of cattle that were on this land. A few months later through the joint efforts of petitioner and Pat approximately half of this newly acquired land was subleased at a profit. During 1947, between 4,000 and 7,000 head of cattle were purchased to stock the property operated by the petitioner and the two foster sons. Prior to 1946, petitioner and his brother, W. J. McMurtry, operated a ranch at Archer City, Texas, and petitioner and another brother, J. L. McMurtry, *63 operated a ranch at Ashtola, Texas. Both ranches were conducted and operated under partnership agreements. During the last few months of 1946, Clyde and Pat assumed the burden of operating these ranches and continued to operate them during 1947. At the end of 1946 petitioner, Clyde and Pat made an oral agreement to the effect that income to the petitioner derived from the operation of the ranches at Archer City and Ashtola would be shared by petitioner, Clyde and Pat in the same proportion as established in the partnership agreement of January 1, 1946. No partnership return of income was filed for C. T. McMurtry in 1947. However, each of the individuals, petitioner, Clyde and Pat, filed individual returns and each paid income tax on an amount which was equal to his distributive share of the ranch earnings. Clyde reported on his tax return $21,013.28 but actually received $11,209.60; Pat reported $21,070.01 but actually received $11,275. No orderly set of books was kept, nor was a formal accounting procedure used to record the activities of the cattle business. In 1946 and 1947 Clyde compiled a list of the expenditures and receipts from the check stubs and bank deposit slips, and *64 from this compilation determined the annual net income of the business, and the distributive shares. Petitioner and the foster sons informed various business associates in 1946 that they had formed a partnership among themselves for the purpose of operating the ranch, and at no time thereafter did the parties deny or refute the partnership arrangement. It was the intention of petitioner and his two foster sons to join together in good faith for the purpose of carrying on a business and share in the profits or losses or both. For 1946 and 1947 Clyde was principally responsible for the administration of the ranch and in that capacity he kept the books, assisted in the financial transactions and established new employer relationships with the ranch personnel. Pat was primarily responsible for the physical operation of the ranch, and petitioner, as a general manager, coordinated the activities of the boys. A very successful cattle business was the result of the triumvirate's efforts. Petitioner was on a cash basis of accounting for the years 1946 and 1947. Opinion Petitioner asserts that the business arrangement between himself, Clyde and Pat Slavin in the years 1946 and 1947 constituted *65 a valid partnership, and that petitioner as a partner was taxable on his distributive share of the net income of the partnership, under section 182, Internal Revenue Code. Respondent asserts that Clyde and Pat Slavin were employed by the petitioner, and the salary deductions as determined by the respondent were reasonable and correct. The question of a valid partnership is not exclusively determined by comparison with some objective standard as supposedly established by a prior case or cases. But as stated in Commissioner v. Culbertson, 337 U.S. 733, we must consider all the facts throwing light on the true intent of the parties. There is no doubt as to the partners' contribution of services. Petitioner contributed physical equipment and business acumen; Pat supplied youth and endurance for the vigorous work; Clyde served in an administrative capacity. Each contribution was made in accordance with the written partnership agreement of January 1, 1946, and the subsequent parol agreement. The inability of petitioner to undertake the physical work at the ranch as he grew older, and his personal desire to insure the growth of the business he started, *66 will most forcibly support a valid business purpose for his entry into the partnership agreement. The "Contract of Employment" militates against the partnership but is not decisive. The contract of employment was not an attempt to integrate the parol partnership agreement, nor does the evidence indicate that the petitioner intended to vitiate or rescind the parol partnership agreement. But rather, he intended to buttress and fortify the parol agreement. We must look to the substance of the contract rather than the form to determine its effect on questions of taxation. The contract of employment was dated the first day of January, 1947, but was in fact drafted and executed subsequent to June 24, 1947, the date of the first Tax Court decision in the Culbertson case. Therefore, the contract did not exist during the first six months of 1947. The name "Contract of Employment" does not control. The contract of employment did not alter the relationship of the parties nor did it change the mode of operations at the ranch. Profits from the operation of the ranch were to be shared in the value of 50 per cent to the petitioner and 25 per cent each to the foster sons; this ratio is identical *67 to that established in the partnership agreements. We held that on the evidence the contract of employment was not effective as such, and did not in itself create an employer-employee relationship between petitioner and the two boys. Income earning power of the ranch was dependent upon the combined efforts and abilities of petitioner, Clyde and Pat and it was only through their united efforts that the profits increased and the business operation expanded during the years 1946 and 1947. Since petitioner was responsible for only part of the earning, he is properly taxable on that part only. Cf. Lucas v. Earl, 281 U.S. 111. Because of petitioner's skill and wealth of experience, he was the leader in the business transactions; nevertheless, the foster sons did participate in the management and control of the business. The contribution of services by each of the foster sons during the years 1946 and 1947 was material to the operation of the business and therefore does support the partnership theory. Cf. Funai v. Commissioner, 181 Fed. (2d) 890; reversing 13 T.C. 696; W. F. Harmon, 13 T.C. 373. Respondent would have us believe that *68 the salary payments to Clyde and Pat Slavin precluded the partnership arrangement. The fact is that partnership salaries are usually no more than a distribution of anticipated profits. Estate of S. U. Tilton, 8 B.T.A. 914. We entertain not the slightest doubt about the sincerity of the petitioner in his belief that he and his two foster sons were partners in fact. The evidence as a whole is convincing that a partnership existed and based thereon we have no doubt that from the very first, petitioner, Clyde and Pat "really and truly intended to join together for the purpose of carrying on the business and sharing in the profits and losses or both". Cf. Zygmunt Matuszewski, 13 T.C. 738. This was true in 1946 after the written agreement, and also in 1947 after the parol agreement. Their association was a valid business partnership entered into on [in] good faith to conduct the cattle business, and the contribution of each individual was of such value to the partnership that the contributor may participate in the distribution of the profits in the manner established by the agreement. A discussion of the second and third contentions of the petitioner is *69 unnecessary. Decision will be entered under Rule 50.