T.C. Memo. 1997-328

UNITED STATES TAX COURT

DAVID DANIEL AND ANNETTE DANIEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7427-96.                           Filed July 21, 1997.

<u>Keith Howard Johnson</u>, for petitioners.

<u>Francis C. Mucciolo</u>, for respondent.

MEMORANDUM OPINION

DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1]    Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable years in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes for 1991 and 1992 in the amounts of $2,667 and $3,654, respectively, and penalties for fraud pursuant to section 6663(a) in the amounts of $1,475 and $2,111, respectively.

After concessions by petitioners,[2] the issues remaining for decision are: (1) Whether petitioners are entitled to charitable contribution deductions for 1991 and 1992 in excess of the amounts allowed by respondent; (2) whether petitioners are entitled to a casualty loss deduction for 1992; and (3) whether petitioners are liable for the section 6663(a) penalty for fraud for 1991 and 1992.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Jacksonville, Florida, on the date the petition was filed in this case.

Petitioner husband (Mr. Daniel) is a retired Marine Corps veteran. Petitioner wife (Mrs. Daniel) works for respondent in the Collections Division. She was initially hired in December 1983 as a clerk and was later promoted to the position of account representative/tax examiner. Her responsibilities include contacting delinquent taxpayers, securing payments, and setting up payment plans. She is not involved in the preparation of

---

[2] Petitioners concede that they received and failed to report interest income in the amounts of $50.49 and $52.17 for 1991 and 1992, respectively. Petitioners also concede that they are only entitled to a deduction for real estate taxes for 1992 in the amount of $901, as determined by respondent.

taxpayers' returns or in determining taxpayers' tax liabilities. During the years at issue, Mrs. Daniel worked as a customer service manager in the Collections Division in charge of overseeing other account representatives.

Petitioners are active members of their local religious community. They also support a missionary church in Jamaica that operates a basic (elementary) school for children. Petitioners are friendly with the missionary church's minister and have attended church functions with the minister and his wife.

In early October 1992, several days of heavy rain caused a flood that damaged petitioners' property. The flood caused water damage to a sunk-in family room and a garage located at the rear of their house. The flood also destroyed several trees in petitioners' backyard.

Mrs. Daniel ordinarily fills out petitioners' tax returns. Since she was uncertain as to how to claim a casualty loss deduction on their 1992 return for the flood damage, she asked Albert Rabassa, one of her subordinates in the Collections Division, to assist her.

Mr. Rabassa began his employment with the Internal Revenue Service (IRS) in September 1990. In 1988 or 1989 (Mr. Rabassa's testimony was that he was not sure of the date), Mr. Rabassa was employed at Florida National Bank as a senior vice president. He was 58 years old and was employed as Division Director of Data Processing; his salary was $99,000 per year. He also enjoyed various "perks" and bonuses. The bank was sold in 1988 or 1989

to First Union and all of the executives, including Mr. Rabassa were terminated. He could not find employment in the banking industry.

He was first employed by the IRS in 1990 as a taxpayer service representative at $16,000 per year. In May 1993, Mr. Rabassa was an account representative in the Automated Collection System Unit (ACS) of the Collection Division; his supervisor was Mrs. Daniel. One of the responsibilities of ACS was to contact persons who had not filed tax returns when required. ACS would often prepare a return for delinquent taxpayers and submit it to them for signature.

While working under the supervision of Mrs. Daniel, Mr. Rabassa kept notes on the way the ACS dealt with taxpayers. Those notes included his observations regarding training issues, assignments, and what he considered to be inappropriate comments between ACS employees and taxpayers that he intended to take up with management. As Mr. Rabassa testified: "Some of the statements made by taxpayer representatives (IRS) to taxpayers were totally inappropriate and should be brought to a discipline--not discipline; that's a wrong choice of words-- should have training on better customer service skill."

Mr. Rabassa had received some training from the IRS in preparing tax returns for delinquent taxpayers.

Mrs. Daniel entered her and Mr. Daniel's names and an identifying number on Form 4684, casualties and thefts, which petitioners attached to their 1992 return. All of the casualty

loss data recorded on the Form 4684 was calculated by Mr. Rabassa and was entered on the form by him. One of the items on the Form 4684 calculated by Mr. Rabassa pertained to flood damage to carpeting in petitioners' home. Mr. Rabassa calculated petitioners' carpeting loss to have been $5,940. Mr. Rabassa explained how he arrived at that figure:

> Annette (Mrs. Daniel) said that she had her family room redecorated and that she had carpeting put in, and I asked the approximate size of the family room. And my original calculation showed a $14 per square yard and she asked me to move it to $21 a square yard. After I completed that calculation, I remembered that my math was incorrect in the fact that it's length time width divided by nine from feet to get square yards. And it came out to be 309 square yards; which was obviously wrong, because that's 2700 square feet, which is bigger than most people's houses, so--
>
> The Court: You remembered that length times width divided by nine gives you square yards?
>
> (Mr. Rabassa): Yes, sir. And I failed to divide by nine, so instead of having a smaller number, it came up to 309 square yards. And I believe if you take 309 square yards times $21 it comes back to 54--I don't have my calculator, but it had to be somewhere in that neighborhood.

Mrs. Daniel discussed her 1992 Federal income tax liability with Mr. Rabassa on April 13, 14, and 15, 1993. Approximately 2 weeks later, after having assisted Mrs. Daniel in preparing petitioners' 1992 return, Mr. Rabassa contacted the Inspection Division of IRS to report that petitioners had filed a fraudulent return for 1992.

For a considerable period of time prior to May 26, 1993, Mr. Rabassa's employee performance was the subject of criticism. In a memorandum to Al Rabassa, Tax Examiner/Team A, from Annette

Daniel, Chief, Team A, dated May 26, 1993, and as a result of a counseling session with Mr. Rabassa on May 25, 1993, Mrs. Daniel stated:

> This letter confirms our discussions of May 25, 1993, during which time I informed you that your performance has been unacceptable for certain critical areas of your position and specific standards.  You have been counseled several times on these same critical elements and standards.[3]

Mrs. Daniel concluded her May 26, 1993, memorandum to Mr. Rabassa as follows:

> Beginning on June 1, 1993 you will be given sixty (60) calendar days in which you will have an opportunity to demonstrate acceptable performance with respect to the above-critical elements and performance standards.  I will be monitoring your performance closely during this period and at the end of the period I will evaluate your performance, with the assistance of the Section Chief and make a determination whether your performance has become acceptable during the period.  You will be informed soon thereafter on whether possible further action is to be taken if any.  I will continue to give you feedback as I discussed with you.
>
> If you have any questions on this matter, I am available to answer your questions and to assist you in improving your performance during this period.  I asked you if you wanted an OJI and your preference is to work with me and I believe we can do it.
>
> cc:  Chief, Section I

Tina Myers, respondent's revenue agent, audited petitioners' 1991 and 1992 returns, and respondent issued the statutory notice of deficiency based upon Ms. Myers' findings and Mr. Rabassa's accusations.

---

[3]    On May 26, 1993, Mrs. Daniel was not aware that Mr. Rabassa had reported her to the Inspection Division of IRS.

Respondent's determinations in the statutory notice of deficiency are presumed to be correct, and petitioners bear the burden of proving otherwise. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Moreover, deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving their entitlement to any deductions claimed. Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).

The first issue for decision is whether petitioners are entitled to charitable contribution deductions for 1991 and 1992 in excess of the amounts allowed by respondent. Petitioners claimed charitable contribution deductions in the amounts of $11,101 and $12,000 on their 1991 and 1992 returns, respectively. In the statutory notice of deficiency, respondent disallowed $9,139 and $9,888 of these claimed amounts, respectively.

Petitioners argue on brief that they are entitled to deductions for the following charitable contributions that have not been allowed by respondent:

|  | 1991 | 1992 |
|---|---|---|
| Penrith Church (Cash) | $3,000 | $3,000 |
| Penrith Church (Goods) | 2,998 | 4,004 |
| Senior Women's Ministries | 808 | 792 |
| Vietnam Veterans of America | 2,270 | 2,400 |
| Total | 9,076 | 10,196 |

Respondent contends that petitioners have not proved that they made the charitable contributions in issue, and as discussed _infra_, they acted fraudulently in claiming a portion of such amounts.

Section 170 allows as a deduction any charitable contribution actually paid during the taxable year. Sec. 170(a)(1); sec. 1.170A-1(a), Income Tax Regs. The term "charitable contribution" is defined under section 170(c) as:

> a contribution or gift to or for the use of --
>
> (1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.
>
> (2) A corporation, trust, or community chest, fund, or foundation --
>
> (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;
>
> (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * *
>
> (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and
>
> (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in * * *, any political campaign on behalf of * * * any candidate for public office.
>
> *    *    *    *    *    *    *

>      (3)  A post or organization of war veterans, or an auxiliary unit or society of, or trust or foundation for, any such post or organization --
>
>           (A) organized in the United States or any of its possessions, and
>
>           (B) no part of the net earnings of which inures to the benefit of any private shareholder or individual.

## Penrith Church

The record shows that Penrith Church was incorporated under the Jamaican Companies Act on June 9, 1987, under the name of Pentecostal Holiness Church of Jamaica Limited.  Penrith Church is not a qualified donee under section 170(c)(2) because it was not created or organized in the United States or in any possession thereof, or under the laws of the United States, any State, the District of Columbia, or any possession of the United States.  See ErSelcuk v. Commissioner, 30 T.C. 962 (1958); Alisobhani v. Commissioner, T.C. Memo. 1994-629.  Therefore, we hold that petitioners, as a matter of law, are not entitled to deductions for their charitable contributions to Penrith Church.[4]

---

[4]     At trial, petitioners' called as their witness Carol Johnson (Johnson).  Johnson resided in Kingston, Jamaica, and is a missionary evangelist in the Pentecostal Holiness Church in Jamaica.  Johnson thoroughly convinced us that petitioners

(continued...)

Senior Women's Ministries

Petitioners submitted statements from Senior Women's Ministries of the First Pentecostal Holiness Church that show petitioners made cash contributions in the amounts of $808 and $792 during 1991 and 1992, respectively. These statements were presented to Ms. Myers during the audit of petitioners' 1991 and 1992 returns. Ms. Myers testified that she did not contact Senior Women's Ministries to verify the documents but nonetheless disallowed any deductions for the amounts shown.

Section 1.170A-13(a)(1)(ii), Income Tax Regs., provides that taxpayers may substantiate a contribution of money with a receipt, letter, or other communication from the donee charitable organization showing the name of the donee, the date of the contribution, and the amount of the contribution. We find that the documents introduced by petitioners meet this substantiation requirement. We hold that petitioners are entitled to charitable contribution deductions for their cash donations in the amounts shown on the statements from Senior Women's Ministries.

Vietnam Veterans of America

Petitioners donated furniture, appliances, sporting equipment, clothing, and various household goods to the Vietnam Veterans of America (Veterans) during 1991 and 1992. Petitioners

---

[4](...continued)
supported the Jamaican church with gifts of cash and donations in kind.

redecorated their home in 1991 and donated their used furniture and appliances to the Veterans. The clothing donated in 1991 included petitioner husband's old Marine uniforms. Most of the 1992 contributions consisted of the contents of Mr. Daniel's deceased parents' home. Mr. Daniel would place the items on the curb on the day specified by the Veterans who would pick them up.

Section 1.170A-13(b), Income Tax Regs., sets forth the substantiation requirements for charitable contributions of property other than money for taxable years beginning after December 31, 1982. In general, taxpayers must obtain a receipt from the donee that shows the name of the donee, the date and location of the donation, and a reasonable description of the donated property. Sec. 1.170A-13(b)(1), Income Tax Regs. Where it is impractical to obtain a receipt, taxpayers must maintain reliable written records of their donations. Id.

Petitioners' offered a receipt from the Veterans as evidence of their 1991 donations but failed to produce a receipt for their 1992 donations. Petitioners also attached to their 1991 and 1992 returns lists of donated items. After reviewing these lists, we find that they do not contain all of the information required by section 1.170A-13(b)(2) and (3), Income Tax Regs. We are convinced, however, by petitioners' credible testimony and the information disclosed on the lists that they made donations to the Veterans in the amounts shown on their returns.

We find that petitioners have substantially complied with the substantiation requirements and have made a good faith attempt to provide respondent with sufficient information. We accept Mrs. Daniel's estimates of the fair market values of the donated items. Accordingly, we hold that petitioners are entitled to charitable contribution deductions for their donations to the Veterans in the amounts claimed on their 1991 and 1992 returns.

The second issue for decision is whether petitioners are entitled to a casualty loss deduction for 1992. Petitioners claimed a casualty loss in the amount of $11,300 on their 1992 return for the following items:

| | |
|---|---|
| Flood Damage to Wall To Wall Carpet & Dry Wall | $5,940 |
| Water Damage to Wall Cabinets | 1,610 |
| Wind Storm Damage - Loss of Five Trees & Removal | 3,750 |

After accounting for certain limitations, petitioners claimed a casualty loss deduction in the amount of $3,100. Respondent disallowed the claimed deduction in the statutory notice of deficiency.

Section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. In the case of an individual's nonbusiness property, the deduction is limited to losses that "arise from fire, storm, shipwreck, or other casualty, or from theft." Sec. 165(c)(3).

The parties agree that petitioners sustained a casualty loss within the meaning of section 165(c)(3) during 1992. Respondent,

however, argues that petitioners have not proved that the amount of the loss sustained exceeds the deduction limitations set forth in section 165(h).

Section 165(h)(1) provides that any casualty loss deduction of an individual is allowed only to the extent that the amount of the loss arising from each casualty exceeds $100. Section 165(h)(2) further limits the deduction to the amount that the aggregate of the losses for the taxable year, in excess of the section 165(h)(1) limitation of $100 per casualty, exceeds 10 percent of the individual's adjusted gross income for the taxable year. For purposes of section 165(h), a husband and wife making a joint return are treated as one individual. Sec. 165(h)(4)(B).

Petitioners' adjusted gross income for 1992 is $80,170.[5] Therefore, petitioners are entitled to a casualty loss deduction to the extent they prove that the amount of the loss exceeds $8,117.[6]

The proper measure of the amount of the loss sustained is the difference between the fair market value of the property immediately before and after the casualty, not to exceed its adjusted basis. Helvering v. Owens, 305 U.S. 468, 471 (1939);

---

[5] This amount includes: (1) Adjusted gross income in the amount of $80,118 as reported by petitioners on their 1992 return; and (2) unreported interest income in the amount of $52 as conceded by petitioners.

[6] This amount includes: (1) The section 165(h)(1) limitation of $100, and (2) the section 165(h)(2) limitation of $8,017 ($80,170 x 10%).

Lamphere v. Commissioner, 70 T.C. 391, 395 (1978); sec. 1.165-7(b)(1), Income Tax Regs. The fair market values of the property must generally be ascertained by competent appraisal. Sec. 1.165-7(a)(2)(i), Income Tax Regs.

If competent appraisal is not available, the actual cost of repairs to the property damaged is also acceptable as evidence of the reduction in value if the taxpayer shows that: (a) The repairs are necessary to restore the property to its condition immediately before the casualty; (b) the amount spent for such repairs is not excessive; (c) the repairs do not care for more than the damage suffered; and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty. Lamphere v. Commissioner, supra at 395-396 (1978); sec. 1.165-7(a)(2)(ii), Income Tax Regs.

Petitioners argue that they have substantiated a casualty loss in the total amount of $9,571.37, based upon the following items:

| | |
|---|---|
| Repairs & installation related to carpeting | $3,819.00 |
| Repairs & installation of new cabinets | 1,352.37 |
| Color television | 300.00 |
| Sod & mulch damage | 100.00 |
| Loss of trees | 3,750.00 |
| Pool pump | 250.00 |

Respondent concedes that petitioners paid Clarence Walker $3,819 to repair water damage to the carpet and tile in their family room. Respondent also concedes that petitioners paid Lawton Carter $1,352.37 to install storage cabinets in

petitioners' garage. Respondent, however, argues that the cabinets installed by Mr. Lawton did not replace any cabinets damaged by the flood.

Mrs. Daniel testified that the flood caused damage to wall cabinets in their garage. The record reveals that Mr. Lawton was hired to install new storage cabinets in petitioners' garage. Mr. Lawton stated in an affidavit that he did not remove any cabinets from the garage, and did not see any signs of water damage. There is, however, no evidence in the record that Mr. Lawton was responsible for removing the damaged cabinets or cleaning up the water damage. Based on Mrs. Daniel's credible testimony, we find that the storage cabinets installed in petitioners' garage replaced cabinets damaged by the flood. We therefore find that the amount paid by petitioners to Mr. Lawton to install the storage cabinets in the garage is includable in the determination of the amount of the casualty loss.

Mr. Daniel testified that the trees claimed on the return as a loss consisted of one "special type palm tree" and a number of fruit trees. Petitioners' adjacent neighbor, Gregory Lamar Kennedy, testified that a tree that was about 30 feet in height was damaged by the flood and was cut down "roughly a couple of months after the flood." Based on Mr. Daniel's credible testimony and Mr. Kennedy's corroborating testimony, we find that the flood caused petitioners to sustain a loss because of the destruction of several trees on their property.

Although the opinion of landowners as to the value of their property is admissible in evidence because of the owner's special relationship to that property, Harmon v. Commissioner, 13 T.C. 373, 383 (1949), Mrs. Daniel admitted at trial that Mr. Rabassa, who had never visited petitioners' home before or after the flood, helped her estimate the amount of the tree loss that was claimed on the return. Mr. Rabassa's opinion does not constitute a competent appraisal under section 1.165-7(a)(2)(i), Income Tax Regs. Petitioners have not submitted any other competent appraisal of the decrease in their property's value or, alternatively, any amounts actually paid for the removal and replacement of the trees. Based on the record, we find that petitioners have failed to establish the precise amount of the casualty loss attributable to their loss of trees.

Under the Cohan rule, since we have found that petitioners sustained a loss of several trees from the flood, we may approximate the amount of the loss, bearing heavily against petitioners whose inexactitude in substantiating the amount of the loss is of their own making. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). We estimate that petitioners' loss of trees reduced the value of petitioners' property by $1,000.

Petitioners argue that they also sustained a loss of a color television and a pool pump, as well as sod and mulch damage to their yard. These items were not claimed on the return, raised in the petition to the Court, or discussed in petitioners' trial

memorandum. At trial, Mrs. Daniel testified that these items were not claimed on the return because she was in a hurry to file the return. Petitioners have not submitted any evidence of the loss of these items other than Mr. Daniel's own estimates given to their insurance company the day after the flood. Based on the record, we find that petitioners have failed to prove that they should be allowed to include these unclaimed items in the determination of the amount of their casualty loss.

We find that petitioners have proved that they sustained a casualty loss in the amount of $6,171.37. After taking into account the section 165(h) limitations, we hold petitioners are not entitled to a casualty loss deduction.

The third issue for decision is whether petitioners are liable for the section 6663(a) penalty for fraud for 1991 and 1992. Respondent determined in the statutory notice of deficiency that the fraud penalty is applicable to the following adjustments to petitioners' taxable income:

|  | 1991 | 1992 |
|---|---|---|
| Real estate taxes | $ 321 | $ 0 |
| Charitable contributions | 6,639 | 6,888 |
| Casualty loss | 0 | 3,100 |
| Interest income | 50 | 52 |

Respondent did not assert the fraud penalty in the statutory notice of deficiency for adjustments to petitioners' charitable contribution deductions for 1991 and 1992 in the amounts of $2,500 and $3,000, respectively. There is no explanation in the

statutory notice of deficiency, respondent's trial memorandum, or respondent's brief as to the particular charitable contributions against which respondent asserts the fraud penalty.

Section 6663(b) provides that if respondent establishes that any part of any underpayment of tax required to be shown on a return is due to fraud, the entire underpayment shall be treated as attributable to fraud and subjected to a 75 percent penalty unless the taxpayer establishes, by the preponderance of the evidence, that some part of the underpayment is not attributable to fraud.  Respondent bears the burden to prove by clear and convincing evidence:  (1) An underpayment of tax by the taxpayer; and (2) that some part of the underpayment is due to fraud.  Sec. 7454(a); Rule 142(b); Clayton v. Commissioner, 102 T.C. 632, 646 (1994); King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 515-516 (1992).  We have already decided that petitioners underpaid their Federal income taxes for 1991 and 1992 due to:  (1) Petitioners' concessions regarding the claimed real estate tax deduction and unreported interest income, and (2) our holdings that they are not entitled to the entire amounts of the claimed charitable contribution or any casualty loss deductions.  Therefore, we address whether such underpayments are due to fraud.

Fraud is established by proving that a taxpayer intended to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax.

Clayton v. Commissioner, supra at 647.  Direct evidence of the requisite fraudulent intent is seldom available, but fraud may be proved by examining circumstantial evidence indicative of the taxpayer's motives.  Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).  Over the years, courts have developed various factors, or "badges", which tend to establish the existence of fraud.  See Clayton v. Commissioner, supra at 647.

Respondent relies primarily on the allegations of Mr. Rabassa, who claims that Mrs. Daniel asked him to fabricate deductions on her 1992 return.  At trial, we had the opportunity to observe Mr. Rabassa's demeanor and find his testimony to be completely discreditable.  Mr. Rabassa's motivation for making such false accusations apparently stems from his inability to adjust to his lower entry level position with the IRS after occupying a high level management position in the banking industry.

Moreover, we are unpersuaded by respondent's attempt to bootstrap the disputed accusations of Mrs. Daniel's disgruntled, subordinate worker into a broad assertion of fraud against an employee who is acknowledged to have a reputation for honesty and fairness, as testified to by her co-worker Martha Brookes.  We find that Mrs. Daniel's reliance upon Mr. Rabassa's advice was certainly an error in her judgment, but does not support a finding of fraudulent intent to evade tax believed to be due and owing.

The circumstantial evidence of fraud alleged by respondent is dwarfed by petitioners' credible testimony.  In addition, Ms. Myers admitted at trial that several of petitioners' documents and other attempts of proving their claimed deductions were rejected without serious consideration of either petitioners' veracity or the authenticity of proffered documents.

We find that there is not in this record any credible evidence in support of respondent's burden to establish by clear and convincing evidence that any part of petitioners' underpayment for either of the years in issue is due to fraud. Accordingly, we hold that petitioners are not liable for the section 6663(a) fraud penalty.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.